Reed R. Kathrein (139304)
Lucas E. Gilmore (250893)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Ave., Suite 202
Berkeley, CA  94710
Telephone: (510) 725-3000
Facsimile:  (510) 725-3001
reed@hbsslaw.com
lucasg@hbsslaw.com

*Attorneys for [Proposed] Lead Plaintiff*
*Vicente Sepulveda*

[Additional counsel on signature page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PEIFA XU, Individually and On Behalf Of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> FIBROGEN, INC., ENRIQUE CONTERNO, JAMES SCHOENECK, and K. PEONY YU, <br><br> Defendants. | No.  3:21-cv-02623-EMC <br><br> <u>CLASS ACTION</u> <br><br> **NOTICE OF MOTION AND MOTION OF VICENTE SEPULVEDA FOR CONSOLIDATION OF RELATED ACTIONS, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF HIS SELECTION OF LEAD COUNSEL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> Date: Thursday, July 22, 2021 <br> Time: 1:30 p.m. <br> Courtroom: 5, 17th Floor <br> Judge: Hon. Edward M. Chen <br><br> ORAL ARGUMENT REQUESTED |

[Caption continued on the next page.]

010998-11/1558350 V2

| | |
|---|---|
| CESARE GRAZIOLI, Individually and On Behalf Of All Others Similarly Situated, | No. 3:21-cv-03212-CRB |
| | CLASS ACTION |
| Plaintiff, | |
| v. | |
| FIBROGEN, INC., ENRIQUE CONTERNO, JAMES SCHOENECK, and K. PEONY YU, | |
| Defendants. | |
| THOMAS LEONARD, Individually and On Behalf Of All Others Similarly Situated, | No. 5:21-cv-03370-EMC |
| | CLASS ACTION |
| Plaintiff, | |
| v. | |
| FIBROGEN, INC., ENRIQUE CONTERNO, JAMES SCHOENECK, and K. PEONY YU, | |
| Defendants. | |
| IBEW LOCAL 353 PENSION PLAN, Individually and On Behalf Of All Others Similarly Situated, | No. 5:21-cv-03396-EJD |
| | CLASS ACTION |
| Plaintiff, | |
| v. | |
| FIBROGEN, INC., ENRIQUE CONTERNO, JAMES A. SCHOENECK, and K. PEONY YU, | |
| Defendants. | |

010998-11/1558350 V2

**NOTICE OF MOTION AND MOTION**

**TO:  ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD**

**PLEASE TAKE NOTICE** that pursuant to the lead plaintiff provisions of the Private Securities Litigation Reform Act of 1995, codified as Section 27(a)(3) of the Securities Act of 1933, 15 U.S.C. § 77z-1(a)(3) (2013), and/or Section 21D(a)(3) of the Securities Exchange Act of 1934, 15 U.S.C. § 78u-4(a)(3), Vicente Sepulveda ("Mr. Sepulveda" or "Movant") will and hereby does move the Honorable Judge Edward M. Chen, United States District Court, Northern District of California, San Francisco Division, Courtroom 5, 17th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, on Thursday, July 22nd, at 1:30 p.m., or as soon thereafter as the matter may be heard, for an order to consolidate these related cases ("Related Actions"); appoint them as lead plaintiff in the above-referenced actions against Defendants FibroGen, Inc. ("FibroGen" or the "Company"), Enrique Conterno, James Schoeneck, and K. Peony Yu (collectively, "Defendants"); and approve their selection of Hagens Berman Sobol Shapiro LLP as lead counsel in the consolidated action.

Mr. Sepulveda's motion is based on this notice of motion and motion, the memorandum of points and authorities in support thereof, the declaration of Lucas E. Gilmore in support of this motion, the pleadings on file in this action, oral argument and such other matters as the Court may consider in hearing this motion.

The portion of this motion to consolidate is made on the grounds that the Related Actions arise from the same operative facts, name identical defendants, and are appropriate for consolidation. The portion of this motion for appointment as Lead Plaintiff is made on the grounds that Mr. Sepulveda believes that he is the most "adequate plaintiff" as defined in the Private Securities Litigation Reform Act of 1995 ("PSLRA") because he has the largest known financial interest in the relief sought by the Class and has incurred substantial losses as a result of their purchase and/or acquisition of shares of FibroGen securities. Further, Mr. Sepulveda satisfies the typicality and adequacy requirements of Federal Rule of Civil Procedure 23.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    STATEMENT OF ISSUES TO BE DECIDED

1.    Whether the Court should consolidate the Related Actions, which involve common questions of law and fact, pursuant to Rule 42(a) of the Federal Rules of Civil Procedure;

2.    Whether the Court should appoint Movant as lead plaintiff pursuant to 15 U.S.C. § 78u-4(a)(3)(B); and

3.    Whether the Court should approve of Movant's selection of Hagens Berman Sobol Shapiro LLP ("Hagens Berman") as lead counsel for the proposed class, pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v).

### II.    PRELIMINARY STATEMENT

The Related Actions allege that FibroGen and its senior executives defrauded investors who purchased or otherwise acquired FibroGen securities during the period from October 18, 2017 to April 6, 2021, inclusive (the "Class Period") in violation of Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b), 78t(a)), and U.S. Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5), by presenting false data of roxadustat (Roxa) to make the anemia drug look safer than it is.[1]  FibroGen investors, including Mr. Sepulveda, incurred significant losses following a series of disclosures beginning on May 2019 and ending on April 6, 2021, when FibroGen stunningly admitted to altering stratification factors to make Roxa's hazard ratios indicate lower risk.  Following each of these disclosures, the price of FibroGen securities fell sharply, damaging Mr. Sepulveda and other investors.

First, the PSLRA provides that "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter has been filed," the court shall not appoint a lead plaintiff until "after the decision on the motion to consolidate is rendered." 15 U.S.C. § 78u-4(a)(3)(B)(ii).  Here, the Related Actions allege common claims under the Exchange Act, and include allegations regarding FibroGen's announcements of certain metrics regarding Roxa. The

---

[1] For purposes of this motion, the longest and most inclusive alleged class period is used. *See Ali v. Intel Corp.*, 2018 WL 2412111, at *2, n.6 (N.D. Cal. May 29, 2018) (collecting cases holding that for purposes of appointing a lead plaintiff, the longest class period governs).

MOT. TO CONSOL. REL. CASES, APPOINT LEAD PL. AND APPROVE COUNSEL
Case No.: 3:21-cv-02623-EMC
010998-11/1558350 V2

- 2

Related Actions also name common defendants and overlapping class periods. Because the complaints involve common questions of fact and law, the Related Actions should be consolidated.

Next, pursuant to the PSLRA, the Court is to appoint as lead plaintiff the movant that possesses the largest financial interest in the outcome of the litigation and that satisfies the requirements of Fed. R. Civ. P. 23. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). Here, Movant incurred losses of $962,828.51 on a first-in-first-out (FIFO) basis and $946,647.02 on a last-in-first-out (LIFO) basis in connection with his Class Period purchases of FibroGen securities, and therefore believes that he has the largest financial interest in the relief sought in this action. See Gilmore Decl., Exs. B and C.

Beyond his significant financial interest, Mr. Sepulveda also meets the applicable requirements of Rule 23 because his claims are typical of absent class members and because he will fairly and adequately represent the interests of the Class. Mr. Sepulveda, a licensed Certified Public Accountant and seasoned trial expert, has the ability and resources to manage the litigation and vigorously fulfill the lead plaintiff's duties and obligations to the Class.

To fulfill his responsibilities as Lead Plaintiff and vigorously prosecute the consolidated litigation on behalf of the Class, Mr. Sepulveda has selected Hagens Berman as Lead Counsel for the Class. Hagens Berman is a nationally-recognized class action firm with an established track record of obtaining class wide recoveries on behalf of defrauded investors, as detailed in its firm resume, and is well qualified to serve as Lead Counsel in the consolidated litigation.

Accordingly, based on his significant financial interest and commitment to overseeing this litigation, Mr. Sepulveda respectfully requests that the Court enter an order appointing him as Lead Plaintiff and approving his selection of Lead Counsel.

### III.    THE RELATED ACTIONS

Based in San Francisco, California, FibroGen is a commercial-stage biopharmaceutical company whose lead product candidate is Roxa, a drug aimed at treating anemia in individuals with chronic kidney disease ("CKD").

The Class Period begins on October 18, 2017, when FibroGen announced that the China Food and Drug Administration ("CFDA") had accepted its new drug application ("NDA") for Roxa

based on two Phase 3 studies in China. Thereafter, Defendants repeatedly touted the safety and efficacy of Roxa, as compared to the current standard of care drug, Epogen, including as to the risk of Major Adverse Cardiac Events ("MACE") incidents, a key safety endpoint scrutinized by the U.S. Food and Drug Administration (the "FDA") when considering a New Drug Application ("NDA")

The Related Actions allege that throughout the Class Period, Defendants made repeated misrepresentations and omissions concerning Roxa that artificially inflated the price of FibroGen's securities. Specifically, during the Class Period, Defendants misrepresented and failed to disclose that: (i) based on the safety data from FibroGen's two Phase 3 trials in China, any safety data obtained from the global Phase 3 trials would require post-hoc changes to the stratification factors to meet the FDA's requirements; (ii) FibroGen's disclosures of U.S. primary cardiovascular safety analyses from the Roxa global Phase 3 program for the treatment of anemia certain safety analyses submitted in connection with CKD included post-hoc changes to the stratification factors; (iii) FibroGen's analyses with the prespecified stratification factors resulted in higher hazard ratios (point estimates of relative risk) and 95% confidence intervals; (iv) based on these analyses, FibroGen could not conclude that Roxa reduces the risk of (or is superior to) MACE+ in dialysis, and MACE and MACE+ in incident dialysis compared to epoetin-alfa; (v) as a result, FibroGen faced significant uncertainty that its NDA for Roxa as a treatment for anemia of CKD would be approved by the FDA; and (vi) as a result of the foregoing, Defendants' statements about the Company's business, operations, and prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times.

The truth began to emerge on May 9, 2019, when FibroGen announced topline results from the pooled safety analyses from its Phase 3 trials of Roxa. The Company highlighted positive MACE results, but issued qualified statements about the drug's risk when compared with the standard of care, such as "there is no clinically meaningful difference in risk." This statement indicated that there was, in fact, some difference in risk, yet FibroGen did not provide any of the data to show that the risk was not meaningful. In order to assuage investor concern over the safety of Roxa, FibroGen

continued to "confirm[] the cardiovascular safety of [R]oxadustat," and assured investors that the Company "had all the guidance from the FDA (it) needed to put together a winning submission."

But on March 1, 2021, after the market closed, FibroGen announced that the FDA was scheduling an advisory committee meeting to review Roxa's NDA, well over a year after its initial submission. An advisory committee meeting this late in the review process indicates that there is a problem with the application, and could, at best, delay the FDA's approval decision and at worst signal that the FDA may not approve the drug.

Then, on April 6, 2021, after the market closed, FibroGen revealed that the Company had made "post-hoc changes to the stratification factors" in its previously submitted Phase 3 trial results—material changes that made the drug appear to be a safe and effective treatment for chronic kidney disease.

Each of these disclosures caused a precipitous decline in the price of FibroGen securities, injuring Movant and other classmembers.

## IV.    ARGUMENT

### A.    The Related Actions Should Be Consolidated.

Under FRCP 42(a), the district court may consolidate actions where the actions involve a "common question of law or fact." The "district court has broad discretion under this rule to consolidate cases pending in the same district." *Investors Research Co. v. U.S. Dist. Court for Cent. Dist. of Cal.*, 877 F.2d 777, 777 (9th Cir. 1989).

Here, the Related Actions present virtually identical factual and legal issues. Each action alleges violations of Sections 10(b) and 20(a) of the Exchange Act, names common Defendants, and stems from the same underlying operative facts and circumstances. Consolidation would plainly expedite these proceedings, reduce duplicative efforts, and save all parties time, energy, and expense. Accordingly, the Actions are appropriate for consolidation and should be consolidated pursuant to Rule 42(a). *See Tollen v. Geron Corp.*, 2020 WL 2494570, at *2 (N.D. Cal. May 14, 2020) (consolidating related securities class actions).

### B.    Movant Should Be Appointed Lead Plaintiff.

Under the PSLRA, the district court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of the class members ... in accordance with this subparagraph." 15 U.S.C. § 78u-4(a)(3)(B)(i); 15 U.S.C. § 77z-1(a)(3)(B)(i). The PSLRA creates a rebuttable presumption that the most adequate plaintiff should be the plaintiff who: (1) has filed the complaint or timely brought the motion for appointment of lead counsel in response to the publication of notice; (2) has the "largest financial interest" in the relief sought by the class; and (3) otherwise satisfies the requirements of FRCP 23. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa)–(cc); 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I)(aa)–(cc). The above presumption may be rebutted only upon proof that the presumptive lead plaintiff: (1) will not fairly and adequately protect the interests of the class; or (2) is subject to "unique defenses" that render such plaintiff incapable of adequately representing the class. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa)–(bb); 15 U.S.C. § 77z-1(a)(3)(B)(iii)(II)(aa)–(bb).

The PSLRA establishes a three-step inquiry for appointing a lead plaintiff. First, a plaintiff files the action and posts notice, allowing other lead plaintiff candidates to file motions. Second, the district court considers which of those plaintiffs has the largest financial interest in the action and whether that plaintiff meets the requirements of FRCP 23. Third, other candidates have the opportunity to rebut the presumption that the putative lead plaintiff can adequately represent the class. *In re Cavanaugh*, 306 F.3d 726, 729–30 (9th Cir. 2002).

### a.    Movant's Motion Meets the PSLRA's Procedural Requirements.

The first of the Related Actions was filed on April 12, 2021. The timely notice of the pendency of the action was published on *Newsfile* on the same day advising putative class members that they had 60 days from the date of the notice to file a motion to seek appointment as lead plaintiff in the lawsuit. *See* Gilmore Decl., Ex. A. Thus, Movant satisfies the procedural requirements of the PSLRA by having timely filed this motion for appointment as lead plaintiff with the Court within sixty days of publication of the notice (*i.e.* on or before June 11, 2021) and submitting a PSLRA certification. *See* Gilmore Decl. Ex. B.

**b.    Movant Has the Largest Financial Interest in the Relief Sought by the Class and is Therefore Presumptively the Most Adequate Plaintiff.**

The PSLRA provides a rebuttable presumption that the "most adequate plaintiff" is the plaintiff with the largest financial interest in the relief sought by the class. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb). Mr. Sepulveda suffered a losses of $962,828.51 FIFO/ $946,647.02 LIFO on his purchases of FibroGen securities during the Class Period. *See* Gilmore Decl., Ex. C. Movant, therefore, has the largest known financial interest in this class action.

**c.    Movant Satisfies the Requirements of Federal Rule of Civil Procedure 23.**

Section 27(a)(3)(B)(iii)(I)(cc) of the Securities Act and Section 21D(a)(3)(B)(iii)(I)(cc) of the Exchange Act, as amended by the PSLRA, provide that the lead plaintiff must satisfy the requirements of Federal Rule of Civil Procedure 23(a). At this stage of the litigation, courts focus only on the typicality and adequacy requirements of Rule 23. *In re Cavanaugh*, 306 F.3d at 732 ("Once it determines which plaintiff has the biggest stake, the court must appoint that plaintiff as lead, unless it finds that he does not satisfy the typicality or adequacy requirements.").

Here, the claims asserted by Movant are typical of the claims of the other members of the proposed class because Movant asserts that he: (1) purchased FibroGen securities during the Class Period in reliance upon the Defendants' purported false and misleading statements; (2) was harmed by Defendants' allegedly false and misleading statements; and (3) suffered damages as a result. Moreover, Movant is not subject to any unique or special defenses. Thus, Movant meets the typicality requirement of Rule 23 because his claims are the same as the claims of the other Class members.

In addition, Movant will adequately represent the Class.  Movant's interest is clearly aligned with the members of the Class because his claim is identical to the claims of the Class who made investments in FibroGen securities. There is no evidence of antagonism between Movant's interest and those of proposed Class members. Furthermore, Movant has a significant, compelling interest in prosecuting this action to a successful conclusion based upon the very large financial loss he incurred as a result of the wrongful conduct alleged herein. These motivations clearly show that Movant will adequately and vigorously pursue the interests of the Class. In addition, Movant has selected lead

counsel that is highly experienced in prosecuting securities class actions to represent himself and the Class in this action. Hagens Berman has undertaken high-stakes complex securities, antitrust, and consumer litigation matters for several decades and pursues active litigation in California's state and federal courts.

In sum, because of Movant's common interest with Class members, his clear motivation and ability to pursue vigorously this action, and his selection of highly competent counsel, the adequacy requirement of Federal Rule of Civil Procedure 23(a) is met. Furthermore, Movant meets the typicality and adequacy requirements of Rule 23(a) and has sustained the largest losses at the hands of the Defendants. Movant is, therefore, the most adequate plaintiff to lead this action in accordance with 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

**C.      The Court Should Approve Movant's Choice of Lead Counsel.**

The PSLRA vests authority in the lead plaintiff to select and retain counsel, subject to the Court's approval. 15 U.S.C. § 78u-4(a)(3)(B)(v); *accord In re Cavanaugh*, 306 F.3d at 734 n.14. "[T]he district court should not reject a lead plaintiff's proposed counsel merely because it would have chosen differently." *Cohen v. U.S. Dist. Ct. for Northern Dist. Of Cal.*, 586 F.3d 703, 711 (9th Cir. 2009) (citation omitted). "[I]f the lead plaintiff has made a reasonable choice of counsel, the district court should generally defer to that choice." *Id*. at 712 (citations omitted). Thus, this Court should not disturb the lead plaintiff's choice of counsel unless necessary to protect the interests of the class. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

Movant has selected Hagens Berman to serve as lead counsel for the Class. Hagens Berman has litigated complex securities fraud actions before this Court (*In re Charles Schwab Secs. Litig.*, No. 3:08-cv-1510-WHA) and has successfully prosecuted many other securities fraud class actions on behalf of injured investors. Gilmore Decl., Ex. E at 31-32. If this motion is granted, Hagens Berman will provide members of the Class with the highest caliber of representation available. Accordingly, the Court should approve Movant's selection of lead counsel.

## V.      CONCLUSION

For all of the foregoing reasons, Mr. Sepulveda respectfully requests that this Court: (1) consolidate the Related Actions; (2) appoint him to serve as lead plaintiff in this action; (3) approve his selection of Hagens Berman as lead counsel for the Class; and (4) grant such other and further relief as the Court may deem just and proper.

Respectfully submitted,

Dated: June 11, 2021

HAGENS BERMAN SOBOL SHAPIRO LLP

By:   */s/ Lucas E. Gilmore*
      LUCAS E. GILMORE

Reed R. Gilmore (139304)
Lucas E. Gilmore (250893)
Danielle Smith (291237)
Wesley A. Wong (314652)
715 Hearst Avenue, Suite 202
Berkeley, CA  94710
Telephone: (510) 725-3000
Facsimile:  (510) 725-3001
reed@hbsslaw.com
lucasg@hbsslaw.com
danielles@hbsslaw.com
wesleyw@hbsslaw.com

Steve W. Berman (*pro hac vice forthcoming*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile:  (206) 623-0594
steve@hbsslaw.com

*Attorneys for [Proposed] Lead Plaintiff Vicente Sepulveda and [Proposed] Lead Counsel*