**ROCHE FREEDMAN LLP**
Ivy T. Ngo (249860)
Velvel (Devin) Freedman (*pro hac vice* forthcoming)
Constantine P. Economides (*pro hac vice* forthcoming)
200 South Biscayne Boulevard
Miami, Florida 33131
Telephone: (305) 971-5943
Facsimile: (646) 392-8842
ingo@rcfllp.com
vel@rcfllp.com
ceconomides@rcfllp.com

*Counsel for Lead Plaintiff Movant Thomas Leonard
and Proposed Lead Counsel for the Class*

*[Additional Counsel on Signature Page]*

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| PEIFA XU, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> FIBROGEN, INC., ENRIQUE CONTERNO, JAMES SCHOENECK, and K. PEONY YU, <br><br> Defendants. | No.  3:21-CV-02623 <br><br> **NOTICE OF MOTION AND MOTION FOR CONSOLIDATION OF RELATED ACTIONS, APPOINTMENT OF THOMAS LEONARD AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> Hon. Edward M. Chen <br> Hearing Date: July 22, 2021 <br> Time: 1:30 p.m. <br> Courtroom 5 |
| ROBERT GUTMAN, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> FIBROGEN, INC., ENRIQUE CONTERNO, and JAMES SCHOENECK, <br><br> Defendants. | No. 4:21-CV-02725-YGR |

**NOTICE OF MOT. AND MOT. FOR CONSOLIDATION OF RELATED ACTIONS, APPT OF THOMAS LEONARD AS LEAD PL. AND APPROVAL OF SELECTION OF COUNSEL; MEM. OF P. & A. IN SUPP. THEREOF - CASE NO.: 3:21-CV-02623**

| | |
|---|---|
| CESARE GRAZIOLI, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>FIBROGEN, INC., ENRIQUE CONTERNO, JAMES SCHOENECK, and K. PEONY YU,<br><br>Defendants. | No. 3:21-CV-03212-CRB |
| THOMAS LEONARD, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>FIBROGEN, INC., ENRIQUE CONTERNO, JAMES SCHOENECK, and K. PEONY YU,<br><br>Defendants. | No. 5:21-CV-03370 |
| IBEW LOCAL 353 PENSION PLAN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>FIBROGEN, INC., ENRIQUE CONTERNO, JAMES SCHOENECK, and K. PEONY YU,<br><br>Defendants. | No. 5:21-CV-03396-EJD |

**NOTICE OF MOT. AND MOT. FOR CONSOLIDATION OF RELATED ACTIONS, APPT OF THOMAS LEONARD AS LEAD PL. AND APPROVAL OF SELECTION OF COUNSEL; MEM. OF P. & A. IN SUPP. THEREOF - CASE NO.: 3:21-CV-02623**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... ii

NOTICE OF MOTION AND MOTION .................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES .......................................................2

    I.       PRELIMINARY STATEMENT ....................................................................2

    II.      STATEMENT OF ISSUES TO BE DECIDED ........................................................3

    III.     FACTUAL BACKGROUND ........................................................................3

    IV.     ARGUMENT .................................................................................................8

        A.      The Related Actions should be consolidated. ....................................8

        B.      The Court should appoint Movants as lead plaintiff.......................................8

            i.   Movant filed a timely motion and is willing to serve as Lead Plaintiff............................................................................9

            ii.  Movant has the largest financial interest in the relief sought by the Class. ......................................................10

            iii. Movant satisfies Rule 23 requirements of typicality and adequacy. .......11

                (a)   Movant's claims are typical of the claims of the Class. .................11

                (b)   Movant is an adequate representative for the Class........................12

        C.      Movant's choice of counsel should be approved. ..........................................13

    V.      CONCLUSION .................................................................................................15

i

## TABLE OF AUTHORITIES

**Cases**

*City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*,
  2012 WL 78780 (N.D. Cal. Jan. 9, 2012) .......................................................................10, 12

*Cohen* v. *U.S. Dist. Court*,
  586 F.3d 703 (9th Cir. 2009) ........................................................................................13

*Hanon v. Dataproducts Corp.*,
  976 F.2d 497 (9th Cir. 1992) ........................................................................................11

*Hessefort v. Super Micro Comput., Inc.*,
  317 F. Supp. 3d 1056 (N.D. Cal. 2018).........................................................................11

*In re Twitter, Inc. Sec. Litig.*,
  326 F.R.D. 619 (N.D. Cal. 2018) ..................................................................................11

*Nicolow v. Hewlett Packard Co.*,
  2013 WL 792642 (N.D. Cal. Mar. 4, 2013) ...................................................................10

*Richardson* v. *TVIA, Inc.*,
  2007 WL 1129344 (N.D. Cal. Apr. 16, 2007).................................................................12

*Sayce v. Forescout Techs., Inc.*,
  2020 WL 6802469 (N.D. Cal. Nov. 19, 2020) ................................................................12

*Veal v. LendingClub Corp.*,
  2018 WL 5879645 (N.D. Cal. Nov. 7, 2018) ..................................................................11

*Weisz v. Calpine Corp.*,
  2002 WL 32818827 (N.D. Cal. Aug. 19, 2002) ...............................................................8

*Zhu* v. *UCBH Holdings, Inc.*,
  682 F. Supp. 2d 1049 (N.D. Cal. 2010).........................................................................11

**Other Authorities**

15 U.S.C. § 78u-4(a)(3)(A) ......................................................................................8,9

15 U.S.C. § 78u-4(a)(3)(B) ................................................................................ *passim*

15 U.S.C. § 78u-4(e) ..............................................................................................10

Federal Rule of Civil Procedure 23(a) .................................................................11, 12

Federal Rule of Civil Procedure 42(a) .................................................................1, 3, 8

ii

**NOTICE OF MOT. AND MOT. FOR CONSOLIDATION OF RELATED ACTIONS, APPT OF THOMAS LEONARD AS LEAD PL. AND APPROVAL OF SELECTION OF COUNSEL; MEM. OF P. & A. IN SUPP. THEREOF - CASE NO.: 3:21-CV-02623**

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on July 22, 2021, at 1:30 p.m., or as soon thereafter as the matter may be heard, in Courtroom 5 on the 17th Floor of the United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, CA 94102 before the Honorable Edward M. Chen, or any Judge sitting in his stead, Movant Thomas Leonard ("Movant") will and hereby does move this Court, pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), and Federal Rule of Civil Procedure ("Rule") 42(a), for an Order:

1.      Consolidating the above-captioned related securities class actions[1];

2.      Appointing Movant as Lead Plaintiff on behalf of a class consisting of all persons or entities who purchased or otherwise acquired FibroGen, Inc. ("FibroGen" or the "Company") securities and/or sold put options between October 18, 2017 and April 6, 2021, both dates inclusive (the "Class Period");

3.      Approving Movant's selection of Roche Freedman LLP ("Roche Freedman") as Lead Counsel for the putative class; and

4.      Granting such other and further relief as the Court may deem just and proper.

This Motion is based on this Notice of Motion, this Memorandum of Points and Authorities in Support Thereof, the Declaration of Ivy T. Ngo filed herewith, and all exhibits attached thereto, and such other written and oral arguments as may be permitted by the Court.

---

[1] Plaintiff's counsel in the *Robert Gutman v. FibroGen, Inc., et al.*, No. 4:21-cv-02725 (N.D. Cal.) ("Gutman Action") filed a Notice of Voluntary Dismissal without Prejudice on June 4, 2021.

1

**NOTICE OF MOT. AND MOT. FOR CONSOLIDATION OF RELATED ACTIONS, APPT OF THOMAS LEONARD AS LEAD PL. AND APPROVAL OF SELECTION OF COUNSEL; MEM. OF P. & A. IN SUPP. THEREOF - CASE NO.: 3:21-CV-02623**

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   PRELIMINARY STATEMENT

Currently pending before this Court are the above-captioned securities class action lawsuits (the "Related Actions") against FibroGen alleging Defendants violated §§ 10(b) and 20(a) of the Exchange Act and Rule 10b-5. ¶1.[2]

Pursuant to the PSLRA, the Court must decide whether to consolidate the Related Actions before selecting a movant to lead this litigation on behalf of the putative class. *See* 15 U.S.C. § 78u-4(a)(3)(B)(ii). As discussed below, consolidation is appropriate under Rule 42 because the Related Actions involve common if legal and factual questions.

After deciding consolidation, the Court must appoint as lead plaintiff the class member it "determines to be most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i)-(B)(iii). Guiding that determination, the PSLRA creates a presumption that the most adequate plaintiff is the person that "has the largest financial interest" and who "otherwise satisfies the requirements of Rule 23 . . ." *Id.*

Movant believes he has the largest financial interest in the outcome of this litigation because during the Class Period, he lost approximately $408,440 due to the alleged fraud. *See* Declaration of Ivy T. Ngo ("Ngo Decl."), Exes. A-B. Moreover, Movant satisfies the requirements of Rule 23 because his claims are typical of the Class's claims, and he will fairly and adequately represent the Class's interests. *See* Ngo Decl., Ex. C. Indeed, Movant has further demonstrated his adequacy by filing a Complaint that extended the Class Period from November 8, 2019 through April 6, 2021 in the first filed case, *Xu v. FibroGen et al.*, No. 3:21-cv-02623, to October 18, 2017 through April 6, 2021. ¶1. In addition, Movant's selection of Roche Freedman to serve as lead counsel should be approved because the Firm possesses extensive experience and expertise in securities fraud and other class actions. *See* Ngo Decl., Ex. D.

---

[2] References to ¶ are to the Class Action Complaint for Violations of the Federal Securities Laws filed by Movant, *Leonard v. Conterno, et al.*, No. 3:21-cv-03370 (ECF No. 1) ("Complaint"). Unless otherwise noted, all emphasis has been added and internal citations have been omitted.

**NOT. OF MOT. AND MOT. FOR CONSOLIDATION OF RELATED ACTIONS, APPT OF THOMAS LEONARD AS LEAD PL. AND APPROVAL OF SELECTION OF COUNSEL; MEM. OF P. & A. IN SUPP. THEREOF - CASE NO.: 3:21-CV-02623**

Accordingly, Movant respectfully requests that the Court: (1) consolidate the Related Actions; (2) appoint Movant as Lead Plaintiff; and (3) approve his selection of Roche Freedman as Lead Counsel.

## II.   STATEMENT OF ISSUES TO BE DECIDED

1.   Whether the Related Actions should be consolidated pursuant to Rule 42(a);

2.   Whether the Court should appoint Movant as Lead Plaintiff pursuant to 15 U.S.C. § 78u-4(a)(3)(B); and

3.   Whether the Court should approve Movant's selection of Roche Freedman as Lead Counsel for the proposed Class pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v).

## III.   FACTUAL BACKGROUND

FibroGen is a commercial-stage biopharmaceutical company whose lead product candidate is roxadustat (Roxa), a drug aimed at treating anemia in individuals with chronic kidney disease ("CKD"). The kidneys in CKD individuals cannot properly filter blood or make the hormone erythropoietin, which tells the body to make more oxygen-carrying red blood cells. ¶ 2.

The Class Period begins on October 18, 2017 when FibroGen announced that the China Food and Drug Administration ("CFDA") had accepted its new drug application ("NDA") for Roxa based on two Phase 3 studies in China which had "met their primary efficacy endpoints with *no new or unexpected safety signals identified*." ¶ 4. The Company touted these studies' positive safety results for the rest of the Class Period.

Having overcome the hurdle of demonstrating to the CFDA that Roxa was sufficiently safe, FibroGen proceeded to present itself as ready to conduct Phase 3 trials sufficient to support an NDA to the U.S. Food and Drug Administration ("FDA"). ¶ 5. And as those Phase 3 trials progressed, Defendants raised no concerns or issues with the safety data that was being obtained, indeed stating on August 7, 2018 that they were "*on track* with timelines for regulatory submission of roxadustat for the treatment of CKD anemia in multiple regions," including the U.S. *Id*.

Thus, on December 20, 2018, FibroGen appeared poised to enter the erythropoietin-

3

**NOT. OF MOT. AND MOT. FOR CONSOLIDATION OF RELATED ACTIONS, APPT OF THOMAS LEONARD AS LEAD PL. AND APPROVAL OF SELECTION OF COUNSEL; MEM. OF P. & A. IN SUPP. THEREOF - CASE NO.: 3:21-CV-02623**

stimulating agent market as the first FDA-approved, orally available drug to compete with infused drugs like Epogen when it announced positive topline results from three global Phase 3 trials: "The preliminary safety analyses of each of these three individual studies show an *overall safety profile consistent with the results observed in prior roxadustat studies*. The *adverse events reported are consistent with those expected* in these study populations with similar background diseases." ¶ 6.

But for the FDA to approve Roxa, Defendants knew that "one of the key safety endpoints to be evaluated [wa]s Major Adverse Cardiac Events (MACE), a composite endpoint of all-cause mortality, stroke and myocardial infarction, in pooled analyses against placebo in NDD [non-dialysis dependent patients] and against epoetin alfa in DD [dialysis-dependent patients] from the pivotal Phase 3 trials." ¶ 7.

As a result, when the safety data did not meet the requisite statistical threshold to claim that Roxa was not inferior to Epogen (as Defendants knew or recklessly disregarded would happen), Defendants simply claimed that there was "*no clinically meaningful difference*" in announcing the "*Positive Topline Results from Pooled Safety Analyses* of Roxadustat Global Phase 3 Program" after the markets closed on May 9, 2019. ¶ 8. But there was no getting around the fact that that "[i]n the pooled analyses of around 4,000 dialysis patients, *the upper bound of the 95% confidence interval (CI) was below the pre-specified non-inferiority margin* for the time to first MACE+ analyses" and that "[i]n the non-dialysis pool of approximately 4,300 patients, non-inferiority was demonstrated for roxadustat compared to placebo in the time to first MACE+, based on *the upper bound of the 95% CI being below the prespecified non-inferiority margin*." *Id*.

On these revelations, the Company's share price fell $10.53, or 23%. ¶ 9. As an analyst with The Motley Fool noted in a May 10, 2019 article, shares of FibroGen "*dropped more than 26%* today after the company reported top-line results from a phase 3 clinical trial" in a press release which "stated that the largest of three patient populations *didn't meet the statistical threshold specified in the study to claim that the drug candidate is noninferior to Epogen*, but the company said it believed there was 'no clinically meaningful difference in risk.'" ¶ 10. The article further

4

pointed out that "[w]hen asked about this *subtle but important difference* on the conference call, CEO Thomas Neff stated that the U.S. Food and Drug Administration had not agreed on the statistical threshold for noninferiority in the first place. That left analysts thinking *regulators could question the drug candidate's safety profile*, especially since it likely has to be as safe as erythropoiesis-stimulating agents such as Epogen to be approved." *Id*.

Despite the data in front of them, Defendants' refrain in Company press releases, during investor calls, and at scientific conferences for the rest of the Class Period was that Roxa appeared to be as safe as, if not safer than, epoetin alfa based on the global Phase 3 studies. ¶ 11. For example, on November 8, 2019, FibroGen issued a press release announcing full pooled Phase 3 safety analyses "*demonstrat[ing] a cardiovascular safety profile* comparable with placebo in patients not on dialysis, and *comparable or in some cases better than that of epoetin alfa* in patients on dialysis." Specifically, in the NDD population, "[r]isks of MACE, MACE+, and all-cause mortality in roxadustat patients were *comparable to placebo* in the ITT [intent-to-treat] analyses based on a reference non-inferiority margin of 1.3." ¶ 12. In the DD population, "[r]isks of MACE and all-cause mortality in roxadustat patients were *not increased* compared to those for patients receiving epoetin alfa based on a reference non-inferiority margin of 1.3" and "[r]isk of MACE+ was *14% lower* in roxadustat-treated patients than in those receiving epoetin alfa." *Id*. And in the ID subgroup of the DD population, "[r]isk of MACE was *30% lower* in roxadustat patients than in epoetin alfa patients, and risk of MACE+ was *34% lower*" and "[r]oxadustat-treated patients' risk showed a trend towards *lower* all-cause mortality relative to epoetin alfa-treated patients." *Id*.

But, as Defendants knew or should have known, the safety data from the global Phase 3 studies had been manipulated to make Roxa look safer than it is. ¶ 13. Investors only found out after the markets closed on April 6, 2021, when FibroGen issued a press release "provid[ing] *clarification of certain prior disclosures of U.S. primary cardiovascular safety analyses* from the roxadustat Phase 3 program for the treatment of anemia of chronic kidney disease:"

"As members of senior management were preparing for the upcoming FDA Advisory Committee meeting, we became aware that *the primary cardiovascular*

5

**NOT. OF MOT. AND MOT. FOR CONSOLIDATION OF RELATED ACTIONS, APPT OF THOMAS LEONARD AS LEAD PL. AND APPROVAL OF SELECTION OF COUNSEL; MEM. OF P. & A. IN SUPP. THEREOF - CASE NO.: 3:21-CV-02623**

*safety analyses included post-hoc changes to the stratification factors*," said Enrique Conterno, Chief Executive Officer, FibroGen.

* * *

The table below describes the cardiovascular safety results using the post-hoc stratification factors reported at the American Society of Nephrology conference in November 2019, as well as the analyses with the pre-specified stratification factors which have not been previously publicly reported.

| | Analyses with post-hoc stratification factors | Analyses with pre-specified stratification factors |
|---|---|---|
| | HR (95% Confidence Interval) | HR (95% Confidence Interval) |
| **Non Dialysis** (OLYMPUS, ANDES, ALPS N=4,270); ITT | | |
| MACE | 1.08 (0.94, 1.24) | 1.10 (0.96, 1.27) |
| MACE+ | 1.04 (0.91, 1.18) | 1.07 (0.94, 1.21) |
| ACM | 1.06 (0.91, 1.23) | 1.08 (0.93, 1.26) |
| **Dialysis Dependent** (HIMALAYAS, SIERRAS, ROCKIES N=3,880); OT-7 | | |
| MACE | 0.96 (0.82, 1.13) | 1.02 (0.88, 1.20) |
| MACE+ | 0.86 (0.74, 0.98) | 0.91 (0.80, 1.05) |
| ACM | 0.96 (0.79, 1.17) | 1.02 (0.84, 1.23) |
| **Incident Dialysis** (N=1,526); OT-7 | | |
| MACE | 0.70 (0.51, 0.96) | 0.82 (0.60, 1.11) |
| MACE+ | 0.66 (0.50, 0.89) | 0.78 (0.59, 1.02) |
| ACM | 0.76 (0.52, 1.11) | 0.82 (0.57, 1.18) |

ITT: intention to treat with long-term follow up
OT-7: on-treatment plus 7 days
Major Adverse Cardiovascular Event (MACE): a composite endpoint of all-cause mortality, stroke, and myocardial infarction.
(MACE+): in addition to the components in MACE, includes hospitalization due to heart failure or unstable angina.
(ACM): all-cause mortality.

As reflected in the table, the analyses with the pre-specified stratification factors result in higher hazard ratios (point estimates of relative risk) and 95% confidence intervals. For MACE+ in dialysis and for MACE and MACE+ in incident dialysis, the 95% confidence intervals include 1.0. While these hazard ratios remain below 1.0, *based on these analyses we cannot conclude that roxadustat reduces the risk of (or is superior to) MACE+ in dialysis, and MACE and MACE+ in incident dialysis compared to epoetin-alfa.*

*Id*. On this news, the Company's share price plummeted $15.83, or 46%. ¶ 14.

As explained in an article published by STAT+ on April 6, 2021 titled "Fibrogen admits false heart-safety data for experimental anemia pill shared with FDA, investors:"

[Defendants] acknowledged Tuesday that the company has been touting *false heart-safety data for its experimental anemia pill for at least two years — a shocking revelation that raises even more questions about the drug's approvability*. Shares of Fibrogen fell 27% to $25 in Tuesday's after-hours trading session as investors questioned the credibility of the company's management team and mulled the ramifications of revised heart-safety data that may no longer be strong enough to pass muster with the Food and Drug Administration…Fibrogen was expecting the FDA to complete its review of roxadustat and render an approval decision by March 20. But in a surprising — and concerning — move announced just three weeks before

6

**NOT. OF MOT. AND MOT. FOR CONSOLIDATION OF RELATED ACTIONS, APPT OF THOMAS LEONARD AS LEAD PL. AND APPROVAL OF SELECTION OF COUNSEL; MEM. OF P. & A. IN SUPP. THEREOF - CASE NO.: 3:21-CV-02623**

that deadline, the FDA instead decided to convene a meeting of outside experts to review the drug's clinical data. The FDA advisory panel meeting is tentatively scheduled for July 15.

\*\*\*

But Tuesday, Fibrogen said that while preparing for the FDA advisory panel, it discovered the ***post-hoc changes to the heart safety "stratification factors."*** When those changes were removed and roxadustat's heart-safety specified in the analysis plan, the results are less robust.

Across three studies involving dialysis patients, ***Fibrogen said it can no longer conclude that roxadustat reduces the risk of cardiovascular events or hospitalization compared to a currently approved anemia injection used as a control.***

¶ 15.

In sum, Defendants made repeated misrepresentations and omissions that artificially inflated the price of FibroGen's securities. ¶ 17. Specifically, during the Class Period, Defendants made false and/or misleading statements or failed to disclose that: (i) based on the safety data from FibroGen's two Phase 3 trials in China, any safety data obtained from the global Phase 3 trials would require post-hoc changes to the stratification factors to meet the FDA's requirements; (ii) FibroGen's disclosures of U.S. primary cardiovascular safety analyses from the Roxa global Phase 3 program for the treatment of anemia certain safety analyses submitted in connection with CKD included post-hoc changes to the stratification factors; (iii) FibroGen's analyses with the pre-specified stratification factors resulted in higher hazard ratios (point estimates of relative risk) and 95% confidence intervals; (iv) based on these analyses, FibroGen could not conclude that Roxa reduces the risk of (or is superior to) MACE+ in dialysis, and MACE and MACE+ in incident dialysis compared to epoetin-alfa; (v) as a result, FibroGen faced significant uncertainty that its NDA for Roxa as a treatment for anemia of CKD would be approved by the FDA; and (vi) as a result of the foregoing, Defendants' statements about the Company's business, operations, and prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times.

Defendants' false and/or misleading statements caused FibroGen securities to trade at inflated prices during the Class Period. ¶ 18. After disclosure of Defendants' false and misleading statements and/or materialization of their concealed risks, FibroGen securities suffered a precipitous decline in market value, thereby causing significant losses and damages to Class members. *Id*.

7

**NOT. OF MOT. AND MOT. FOR CONSOLIDATION OF RELATED ACTIONS, APPT OF THOMAS LEONARD AS LEAD PL. AND APPROVAL OF SELECTION OF COUNSEL; MEM. OF P. & A. IN SUPP. THEREOF - CASE NO.: 3:21-CV-02623**

## IV.    ARGUMENT

### A.  The Related Actions should be consolidated.

Consolidation of related cases is proper where, as here, the actions "involve a common question of law or fact," such that consolidation would avoid unnecessary cost, delay, and overlap in adjudication. Fed. R. Civ. P. 42(a). The PSLRA contemplates consolidation where "more than on action on behalf of a class asserting substantially the same claim or claims arising under this chapter has been filed." 15 U.S.C. § 78u-4(a)(3)(A)(ii). Therefore, the PSLRA does not displace the traditional legal standards for consolidation under Rule 42(a).

Consolidation is appropriate when the action before the court involve common questions of law or fact. *See* Fed. R. Civ. P. 42(a). Differences in causes of action, defendants, or the class period do not render consolidation inappropriate if the cases present sufficiently common questions of fact and law and the differences do not outweigh the interest of judicial economy served by consolidation. *See Weisz v. Calpine Corp.,* 2002 WL 32818827, at *3 (N.D. Cal. Aug. 19, 2002).

The Related Actions here present substantially similar factual and legal issues, allege identical claims and name identical defendants. *See generally Xu v. FibroGen, Inc., et al*, No. 3:21-cv-02623 (ECF No. 1); *Grazioli v. FibroGen, Inc., et al*, No. 3:21-cv-03212 (ECF No. 1); *IBEW LOCAL 353 Pension Plan v. FibroGen, Inc., et al*, No. 3:21-cv-03396 (ECF No. 1); *Leonard v. Conterno et al*, No. 3:21-cv-03370 (ECF No. 1). Accordingly, the Related Actions should be consolidated.

### B.  The Court should appoint Movants as lead plaintiff.

Within the first 20 days of filing suit, the PLSRA requires the plaintiff in the first filed class action to publish a notice in a widely circulated national business publication or wire service that advises potential class members the action is pending and that they have a right to move for lead plaintiff in 60 days. 15 U.S.C. § 78u-4(a)(3)(A).

The Court must consider any motion seeking appointment as lead plaintiff within 90 days of that notice and must appoint the movant that the court determines to be "most capable of

8

**NOT. OF MOT. AND MOT. FOR CONSOLIDATION OF RELATED ACTIONS, APPT OF THOMAS LEONARD AS LEAD PL. AND APPROVAL OF SELECTION OF COUNSEL; MEM. OF P. & A. IN SUPP. THEREOF - CASE NO.: 3:21-CV-02623**

adequately representing the interests of class members." *See* 15 U.S.C. § 78u-4(a)(3)(B)(i).

The PSLRA provides a presumption that the most "adequate plaintiff" to serve as lead plaintiff is the "person or group of persons" that:

> (aa)   has either filed the complaint or made a motion in response to a notice;
> (bb)   in the determination of the court, has the largest financial interest in the relief sought by the class; and
> (cc)   otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). The presumption may be rebutted only upon proof by a Class member that the presumptive most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

As set forth below, Movant has complied with the procedural prerequisites of the PSLRA and possesses, to the best of his knowledge, the largest financial interest in the litigation of any Class member(s) seeking appointment as lead plaintiff. Movant is also unaware of any unique defenses that could be raised against him. Therefore, Movant is entitled to the presumption that he is the most adequate plaintiff to represent the Class. He also satisfies the typicality and adequacy requirements of Rule 23, and, as a result, should be appointed lead plaintiff in the Consolidated Action.

**i.    Movant filed a timely motion and is willing to serve as Lead Plaintiff.**

Within 20 days of the first-filed complaint (*i.e.,* on April 12, 2021), Plaintiff Xu published the required notice through *Newsfile Corp.*, a widely circulated national business-oriented wire service. 15 U.S.C. § 78u-4(a)(3)(A)(i). *See* Ngo Decl., Ex. E. Movant timely filed his motion within the next 60 days, *i.e.,* by June 11, 2021. 15 U.S.C. § 78u-4(a)(3)(A)(i). Movant has filed herewith a PSLRA certification and declaration attesting that he is willing to serve as Lead Plaintiff of the Class and remains willing to provide testimony at deposition and trial, if necessary. *See* Ngo Decl., Exes. A, C. Accordingly, Movant has satisfied the first requirement to serve as Lead Plaintiff of the Class.

9

**NOT. OF MOT. AND MOT. FOR CONSOLIDATION OF RELATED ACTIONS, APPT OF THOMAS LEONARD AS LEAD PL. AND APPROVAL OF SELECTION OF COUNSEL; MEM. OF P. & A. IN SUPP. THEREOF - CASE NO.: 3:21-CV-02623**

**ii.    Movant has the largest financial interest in the relief sought by the Class.**

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff…is the person or group of persons that…has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii). As demonstrated herein, Movant has the largest financial interest in the relief sought by the Class and should therefore be presumed the most adequate plaintiff to serve as Lead Plaintiff. *See* Ngo Decl., Exes. A-B.

Under the PSLRA, damages are calculated based on: (i) the difference between the purchase price paid for the shares and the average trading price of the shares during the 90-day period beginning on the date the information correcting the misstatement was disseminated; or (ii) the difference between the purchase price paid for the shares and the average trading price of the shares between the date when the misstatement was corrected and the date on which the plaintiff sold their shares, if they sold their shares before the end of the 90-day period. 15 U.S.C. § 78u-4(e).

In assessing the largest financial interest, the Court generally considers: "(1) the number of shares purchased;" "(2) the number of net shares purchased;" "(3) total net funds expended [by the plaintiffs] during the class period;" and "(4) the approximate losses suffered [by the plaintiffs]." *City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, 2012 WL 78780, at *4 (N.D. Cal. Jan. 9, 2012). Of these factors, this Court tends to emphasize approximate loss in assessing a lead plaintiff movant's financial interest within the meaning of the PSLRA. *See e.g.*, *Nicolow v. Hewlett Packard Co.*, 2013 WL 792642, at *4 (N.D. Cal. Mar. 4, 2013).

During the Class Period, Movant suffered substantial losses of approximately $408,440 as a result of Defendants' alleged fraudulent statements. *See* Ngo Decl., Ex. B. Movant thus has a significant financial interest in the outcome of this case. To his knowledge, there are no other applicants who have sought, or are seeking, appointment as lead plaintiff that have a larger financial interest and also satisfy Rule 23. Because Movant possesses the largest financial interest in the outcome of this litigation, he may be presumed to be the "most adequate" plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

10

**NOT. OF MOT. AND MOT. FOR CONSOLIDATION OF RELATED ACTIONS, APPT OF THOMAS LEONARD AS LEAD PL. AND APPROVAL OF SELECTION OF COUNSEL; MEM. OF P. & A. IN SUPP. THEREOF - CASE NO.: 3:21-CV-02623**

### iii. Movant satisfies Rule 23 requirements of typicality and adequacy.

In addition to demonstrating the largest financial interest, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii). Rule 23(a) requires the following four requirements be satisfied:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative party are typical of the claims or defenses of the class; and (4) the representative party will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Of these four prerequisites, only typicality and adequacy address the personal characteristics of the lead plaintiff movant, and thus, are the only two considered at this stage. *See Hessefort v. Super Micro Comput., Inc.*, 317 F. Supp. 3d 1056, 1060-61 (N.D. Cal. 2018); *Veal v. LendingClub Corp.*, 2018 WL 5879645, at *4 (N.D. Cal. Nov. 7, 2018).

As detailed below, Movant satisfies both the typicality and adequacy requirements of Rule 23, thereby justifying his appointment as lead plaintiff.

### (a) Movant's claims are typical of the claims of the Class.

Under Rule 23(a)(3), the claims or defenses of the representative parties must be typical of those of the class. A plaintiff satisfies the typicality requirement if the "plaintiff's claims arise from the same event or course of conduct that gives rise to the claims of the other class members and the claims are based on the same legal theory." *Zhu* v. *UCBH Holdings, Inc.*, 682 F. Supp. 2d 1049, 1053 (N.D. Cal. 2010) (citing *Hanon v. Dataproducts Corp.,* 976 F.2d 497, 508 (9th Cir. 1992)); *See also In re Twitter, Inc. Sec. Litig.*, 326 F.R.D. 619, 629 (N.D. Cal. 2018). "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Hanon*, 976 F.2d at 508.

In this case, the typicality requirement is met because Movant's claims are typical, if not identical, to the other members of the putative class. Further, there is nothing to indicate that Movant's claims conflict with those of the putative class or that he is subject to unique defenses. Movant, like the other members of the Class, acquired FibroGen securities during the Class Period

11

**NOT. OF MOT. AND MOT. FOR CONSOLIDATION OF RELATED ACTIONS, APPT OF THOMAS LEONARD AS LEAD PL. AND APPROVAL OF SELECTION OF COUNSEL; MEM. OF P. & A. IN SUPP. THEREOF - CASE NO.: 3:21-CV-02623**

at prices artificially inflated by Defendants' materially false and misleading statements, and were damaged thereby when the truth was revealed. Movant suffered loses similar to those of other Class members and their losses resulted from Defendants' common course of wrongful conduct. Accordingly, Movant satisfies the typicality requirement.

### (b) Movant is an adequate representative for the Class.

Under Rule 23(a)(4), representative parties must "fairly and adequately protect the interests of the class." The PSLRA directs the Court to limit its inquiry regarding the adequacy to "whether the class representative[s] and [their] counsel have conflicts of interest with other class members and whether the class representative[s] and [their] counsel will prosecute the action vigorously on behalf of the class." *Juniper Networks*, 2012 WL 78780 *5. "The adequacy requirement is met if there are no conflicts between the representative and class interests, and the representative's attorneys are qualified, experienced, and generally able to conduct the litigation." *Richardson v. TVIA, Inc.*, 2007 WL 1129344, at *4 (N.D. Cal. Apr. 16, 2007).

Movant has demonstrated his ability, pursuant to Rule 23(a)(4), to protect the interest of the putative class fairly and adequately. *See* Ngo Decl. Exes. A-D. Movant is retired from his career in the construction industry and is a co-owner of a restaurant, residing in Maryland. He has been investing in securities markets for more than 35 years. Notably, Movant filed a complaint and timely filed this motion to preserve the Class's interests. In addition, as demonstrated *supra,* Movant has a significant interest in the outcome of this case based on his financial losses and has no reason to believe that his interests are adverse to those of the other Class members.

Moreover, Movant understands the responsibilities of a Lead Plaintiff, including his selection of lead counsel, and the overseeing and monitoring of this litigation. *See* Ngo Decl., Ex. C. As such, Movant communicated with competent, experienced counsel concerning this case, and retained Roche Freedman, who, as shown below, is experienced in litigating lawsuits such as this case and Movant will submit his choice of Counsel to the Court for approval. Therefore, Movant is an adequate representative for the Class. *See Sayce v. Forescout Techs., Inc.*, 2020 WL 6802469, at

12

**NOT. OF MOT. AND MOT. FOR CONSOLIDATION OF RELATED ACTIONS, APPT OF THOMAS LEONARD AS LEAD PL. AND APPROVAL OF SELECTION OF COUNSEL; MEM. OF P. & A. IN SUPP. THEREOF - CASE NO.: 3:21-CV-02623**

*7 (N.D. Cal. Nov. 19, 2020) (finding adequacy met where movant's "significantly larger financial interest in this case and through their selection of counsel experienced in securities class action litigation, ... [movant] has sufficiently demonstrated its alignment of interest with the rest of the class as well as its intent and willingness to act as vigorous advocates on behalf of the entire class").

Accordingly, at this stage of the proceedings, Movant has met all requirements for appointment as lead plaintiff. Movant has timely filed his motion, has sustained the largest amount of losses from Defendants' alleged wrongdoing, and has made the preliminary showing necessary to satisfy the typicality and adequacy requirements of Rule 23. Thus, Movant is entitled to the presumption of "most adequate" plaintiff and, as such, should be appointed to lead the Consolidated Action. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)-(II).

### C. Movant's choice of counsel should be approved.

Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v), the PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to the Court's approval. The Court should interfere with the lead plaintiff's selection only when necessary to "protect the interests of the class." § 78u-4(a)(3)(B)(iii)(II)(aa); *see also Cohen v. U.S. Dist. Court*, 586 F.3d 703, 712 (9th Cir. 2009) ("[I]f the lead plaintiff has made a reasonable choice of counsel, the district court should generally defer to that choice."). The record confirms that Movant's selection of counsel should be approved; Roche Freedman is qualified, experienced, and capable of effectively prosecuting the Consolidated Action on behalf of Movant and the Class. *See* Ngo Decl., Ex. D. *see also* Opinion & Order, *D'Arcy v. Sequential Brands Group, Inc. et al.*, No. 2:21-cv-02305-JFW-RAO (C.D. Cal. June 11, 2021), ECF No. 25 (appointing Roche Freedman sole lead counsel of the securities class action, concluding that "it is capable of serving competently in the role of Lead Counsel. In fact, [Roche Freedman attorneys have] extensive expertise and experience in the field of securities litigation and has successfully prosecuted numerous securities fraud class actions and obtained excellent recoveries on behalf of defrauded investors.").

**NOT. OF MOT. AND MOT. FOR CONSOLIDATION OF RELATED ACTIONS, APPT OF THOMAS LEONARD AS LEAD PL. AND APPROVAL OF SELECTION OF COUNSEL; MEM. OF P. & A. IN SUPP. THEREOF - CASE NO.: 3:21-CV-02623**

In addition to Roche Freedman's most recent appointment as Lead Counsel in *D'Arcy v. Sequential Brands Group, Inc. et al.*, No. 2:21-cv-02305 (C.D. Cal.), it was also appointed, and is serving as, Lead Counsel in the following securities fraud class actions: *In re Qiwi Plc Securities Litigation*, No. 1:20-cv-06054 (E.D.N.Y.); *In re Renewable Energy Group Securities Litigation*, No. 1:21-cv-01832 (S.D.N.Y.); *In re Qutoutiao Inc. Securities Litigation*, No. 1:20-cv-06707 (S.D.N.Y.); *Chapman v. Fennec Pharma Inc. et al.*, No. 1:20-cv-812 (M.D.N.C.); *Garcia v. J2 Global, Inc. et al.*, No. 2:20-cv-06096 (C.D. Cal.); and *In re Sona Nanotech, Inc. Securities Litigation*, No. 2:20-cv-11405 (C.D. Cal.). Roche Freedman has also been appointed, and is serving, as Co-Lead Counsel in the following securities fraud class action cases: *Clifford et al. v. Tron Found. et al.*, No. 1:20-cv-02804 (S.D.N.Y.); *Clifford v. Bibox et al.*, No. 1:20-cv-02807 (S.D.N.Y.); *Lee et al. v. Binance et al.,* No. 1:20-cv-02803 (S.D.N.Y.); *Williams v. KuCoin et al.*, No. 1:20-cv-02806 (S.D.N.Y.); *Lowry v. RTI Surgical Holdings, Inc. et al.*, No. 1:20-cv-01939 (N.D. Ill.); and *Hartel v. Geo Group, Inc. et al.*, No. 9:20-cv-81063 (S.D. Fla.). Additionally, Roche Freedman has been appointed, and is serving, as Co-Lead Counsel in *Leibowitz v. iFinex Inc.*, No. 1:19-cv-09236-KPF (S.D.N.Y.), an antitrust, market manipulation, and RICO class action.

Moreover, Roche Freedman's attorneys have decades of experience in complex litigation, including securities litigation and class actions on behalf of plaintiffs and defendants. *See* Ngo Decl., Ex. D. The Firm's attorneys have previously been appointed as co-lead counsel in securities class actions and/or have clerked for federal judges sitting in the Southern District of New York, Northern District of California, Eastern District of Pennsylvania, Eastern District of Louisiana, Southern District of Florida, District of Connecticut, Second Circuit, Fourth Circuit, Fifth Circuit, Ninth Circuit, and United State Supreme Court. *See id*. Movant respectfully submits that this wealth of experience and qualifications demonstrates Roche Freedman's ability to provide the highest caliber of representation to the Class.

14

**NOT. OF MOT. AND MOT. FOR CONSOLIDATION OF RELATED ACTIONS, APPT OF THOMAS LEONARD AS LEAD PL. AND APPROVAL OF SELECTION OF COUNSEL; MEM. OF P. & A. IN SUPP. THEREOF - CASE NO.: 3:21-CV-02623**

## V.    CONCLUSION

Movant respectfully requests that the Court: (1) consolidate the above-captioned actions; (2) appoint Movant as Lead Plaintiff; (3) approve Movant's selection of Roche Freedman as Lead Counsel for the putative Class; and (4) grant such other relief as the Court may deem just and proper.

DATED: June 11, 2021                                    Respectfully Submitted,

**ROCHE FREEDMAN LLP**

*/s/ Ivy T. Ngo*
Ivy T. Ngo (249860)
Velvel (Devin) Freedman (*pro hac vice* forthcoming)
Constantine P. Economides *(pro hac vice* forthcoming)
200 South Biscayne Boulevard
Miami, Florida 33131
Telephone: (305) 971-5943
Email: ingo@rcfllp.com
Email: vel@rcfllp.com
Email: ceconomides@rcfllp.com

*Counsel for Lead Plaintiff Movant Thomas Leonard and Proposed Lead Counsel for the Class*

**THE SCHALL LAW FIRM**
Brian Schall (290685)
1880 Century Park East, Suite 404
Los Angeles, CA 90067
Telephone: (424) 303-1964
Email: brian@schallfirm.com

*Additional Counsel for Movant Thomas Leonard*

15

**NOT. OF MOT. AND MOT. FOR CONSOLIDATION OF RELATED ACTIONS, APPT OF THOMAS LEONARD AS LEAD PL. AND APPROVAL OF SELECTION OF COUNSEL; MEM. OF P. & A. IN SUPP. THEREOF - CASE NO.: 3:21-CV-02623**

**CERTIFICATE OF SERVICE**

I hereby certify under penalty of perjury that on June 11, 2021, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to counsel of record.

By:   */s/ Ivy T. Ngo*
Ivy T. Ngo

0

**NOT. OF MOT. AND MOT. FOR CONSOLIDATION OF RELATED ACTIONS, APPT OF THOMAS LEONARD AS LEAD PL. AND APPROVAL OF SELECTION OF COUNSEL; MEM. OF P. & A. IN SUPP. THEREOF - CASE NO.: 3:21-CV-02623**