Reed R. Kathrein (139304)
Lucas E. Gilmore (250893)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Ave., Suite 202
Berkeley, CA  94710
Telephone: (510) 725-3000
Facsimile:  (510) 725-3001
reed@hbsslaw.com
lucasg@hbsslaw.com

*Attorneys for [Proposed] Lead Plaintiff*
*Vicente Sepulveda*

[Additional counsel on signature page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PEIFA XU, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>FIBROGEN, INC., ENRIQUE CONTERNO, JAMES SCHOENECK, and K. PEONY YU,<br><br>Defendants. | No.  3:21-cv-02623-EMC<br><br>CLASS ACTION<br><br>**MEMORANDUM IN OPPOSITION TO COMPETING MOTIONS FOR CONSOLIDATION OF RELATED ACTIONS, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF SELECTION OF LEAD COUNSEL**<br><br>Date: Thursday, July 22, 2021<br>Time: 1:30 p.m.<br>Courtroom: 5, 17th Floor<br>Judge: Hon. Edward M. Chen<br><br>ORAL ARGUMENT REQUESTED |

[Caption continued on the next page.]

010998-11/1563905 V1

| | |
|---|---|
| CESARE GRAZIOLI, Individually and on Behalf of All Others Similarly Situated, | No. 3:21-cv-03212-CRB |
| | CLASS ACTION |
| Plaintiff, | |
| v. | |
| FIBROGEN, INC., ENRIQUE CONTERNO, JAMES SCHOENECK, and K. PEONY YU, | |
| Defendants. | |
| THOMAS LEONARD, Individually and on Behalf of All Others Similarly Situated, | No. 5:21-cv-03370-EMC |
| | CLASS ACTION |
| Plaintiff, | |
| v. | |
| FIBROGEN, INC., ENRIQUE CONTERNO, JAMES SCHOENECK, and K. PEONY YU, | |
| Defendants. | |
| IBEW LOCAL 353 PENSION PLAN, Individually and on Behalf of All Others Similarly Situated, | No. 5:21-cv-03396-EJD |
| | CLASS ACTION |
| Plaintiff, | |
| v. | |
| FIBROGEN, INC., ENRIQUE CONTERNO, JAMES A. SCHOENECK, and K. PEONY YU, | |
| Defendants. | |

**TABLE OF CONTENTS**

**Page**

I.      PRELIMINARY STATEMENT .............................................................................................1

II.     ARGUMENT ..................................................................................................................3

       A.      The Court Should Remain Skeptical of Lawyer-Engineered Groups ........................3

       B.      The Retirement Systems Have Failed to Demonstrate Their Ability to
           Act as a Cohesive and Independent Unit...................................................................5

           1.      The Retirement Systems Have No Pre-Litigation Relationship.....................5

           2.      The Retirement Systems Have Exhibited Minimal Cooperation
               Thus Far........................................................................................................6

           3.      The Retirement Systems Have No Coherent Plan for Managing
               the Litigation ................................................................................................6

       C.      Baltimore Employees Is Subject to Unique Defenses................................................7

       D.      Mr. Sepulveda is the Presumptive Lead Plaintiff......................................................9

       E.      Mr. Sepulveda Selected Well-Qualified Lead Counsel To Represent
           The Class ....................................................................................................................9

III.    CONCLUSION ..............................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*In re Bally Total Fitness Sec. Litig.*,
2005 WL 627960 (N.D. Ill. Mar. 15, 2005) ........................................................................4, 9

*Brady v. Top Shops Inc.*,
324 F. Supp. 3d 335 (E.D.N.Y. 2018) ...................................................................................4, 5

*In re Cendant Corp.*,
264 F.3d 201 (3rd Cir. 2001) .....................................................................................................6

*Eichenholtz v. Verifone Holdings, Inc.*,
2008 WL 3925289 (N.D. Cal. Aug. 22, 2008) ...........................................................................4

*In re Enron Corp. Sec. Litig.*,
206 F.R.D. 427 (S.D. Tex. 2002) ..........................................................................................3, 5

*In re E.Spire Commc'ns. Sec. Litig.*,
231 F.R.D. 207 (D. Md. 2000) ...................................................................................................4

*Haideri v. Jumei Int'l Holding Ltd.*,
2020 WL 5291872 (N.D. Cal. Sept. 4, 2020) ........................................................................2, 4

*Isaacs v. Musk*,
2018 WL 6182753 (N.D. Cal. Nov. 27, 2018) ................................................................*passim*

*J.P. Morgan Chase Bank v. Winnick*,
228 F.R.D. 505 (S.D.N.Y.2005) ................................................................................................9

*In re Petrobras Sec. Litig.*,
104 F. Supp. 3d 618 (S.D.N.Y. 2015) .............................................................................*passim*

*In re Razorfish, Inc. Sec. Litig.*,
143 F. Supp. 2d 304 (S.D.N.Y. 2001) ........................................................................................5

*Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*,
314 F.R.D. 341 (S.D.N.Y. 2016) ................................................................................................9

*In re SLM Corp. Sec. Litig.*,
258 F.R.D. 112 (S.D.N.Y. 2009) ................................................................................................8

*Steamfitters Loc. 449 Pension Fund v. Cent. Eur. Distrib. Corp.*,
2012 WL 3638629 (D.N.J. Aug. 22, 2012) ...............................................................................7

*Tsirekidze v. Syntax-Brillian Corp.*,
   2008 WL 942273 (D. Ariz. Apr. 7, 2008) ..............................................................................9

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
   589 F. Supp. 2d 388 (S.D.N.Y. 2008) ...................................................................................5

**Federal Statutes**

15 U.S.C. § 78u- 4 *et seq.*..........................................................................................................*passim*

15 U.S.C. § 78u- 4(a)(3)(B)(iii)(II) ...............................................................................................9

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa) .........................................................................................10

15 U.S.C. § 78u-4(a)(3)(B)(v)........................................................................................................9

**Other Authorities**

Fed. R. Civ. P. 23 .....................................................................................................................1, 9

Md. Code, Estates & Trusts § 17-110 ...........................................................................................8

H.R. CONF. REP. 104-369, at 32 (1995), reprinted in 1995 U.S.C.C.A.N. 730 ...........................4

S. REP. 104-98 (1995), reprinted in 1995 U.S.C.C.A.N. 679.........................................................4

# I.    PRELIMINARY STATEMENT

Presently, there are three competing motions seeking appointment as lead plaintiff: (1) Vicente Sepulveda ("Mr. Sepulveda"); (2) the "Retirement Systems," a group composed of three unrelated institutional investors (ECF No. 29); and (3) Giuliana Mollo and Stefano Branca, a nephew and aunt who reside in Italy ("Mollo-Branca") (ECF No. 40).[1] Under the PSLRA, the "most capable" plaintiff – and hence the lead plaintiff – is the one who has the greatest financial stake in the outcome of the case, *so long as* that plaintiff meets the requirements of Rule 23. Here, Mr. Sepulveda is demonstrably the "most capable" plaintiff, since he is the movant with the largest financial interest, who also satisfies Rule 23's requirements. Mr. Sepulveda individually has suffered losses over $946,647 on a last-in-first-out (LIFO) basis, nearly doubling the next largest individual applicant's loss.[2]



- Sepulveda
- Employees' Retirement System of the City of Baltimore
- City of Philadelphia Board of Pensions and Retirement
- Leonard
- Mollo
- Plymouth County Retirement Association
- Branca
- Richard

---

[1] One other movant, Brett Richard, has withdrawn his motion. ECF Nos. 18, 48. Another movant, Thomas Leonard, has filed a notice of non-opposition to the competing motions. ECF Nos. 37, 49.

[2] All competing movants appear to agree that: (i) the class covers all Fibrogen securities (including options); (ii) the relevant class period is October 18, 2017 to April 6, 2021; and (iii) financial interest should be measured by the applicants' LIFO losses on Class Period transactions. ECF Nos. 23-3, 30-3, 41-4.

In addition, Mr. Sepulveda – a licensed CPA and seasoned trial expert with extensive experience managing litigation attorneys – fully understands the Lead Plaintiff's obligations to the Class under the PSLRA and is willing and able to undertake the responsibilities of the Lead Plaintiff to supervise lead counsel and ensure the vigorous prosecution of this action. ECF No. 23-2 at ¶ 4. The Court can therefore be assured that Mr. Sepulveda will deliver the vigorous, investor-driven representation to which the Class is entitled.

By contrast, there are serious disqualifying issues with the Retirement Systems. The group members' individual losses are each considerably less than those of Mr. Sepulveda. ECF No. 30-3. The group's largest member, Employees' Retirement System of the City of Baltimore ("Baltimore Employees"), claims LIFO losses of $505,254 compared to Mr. Sepulveda at $946,647. *Id*. at 2. But even that figure is grossly inflated. This is because over 40% of Baltimore Employees' claimed losses ($203,190) stem from transactions made by a wholly separate retirement system, Fire and Police Employees' Retirement System of the City of Baltimore ("Baltimore F&P"), which wants nothing to do with this litigation. *Id*.; *see also* ECF No. 30-5. Although Baltimore Employees contends it has standing to pursue Baltimore F&P's claims under an assignment, Baltimore Employees has agreed to remit back to Baltimore F&P any proceeds received as a result of the assignment. ECF No. 30-5 at ¶ 5. Accordingly, Baltimore Employees' true financial interest in the case is only $302,064.

More fundamental, the Retirement Systems have failed to meet their burden of showing that aggregating their individual losses is appropriate here for purposes of determining financial interest – the only viable path in which they could supplant Mr. Sepulveda as lead plaintiff. Instead, their deficient Joint Declaration proves they are an "artificial group" created by their counsel for the sole purpose of establishing the largest financial stake—a practice that courts in this District, including this Court, disfavors.[3] The Retirement Systems have no pre-litigation relationship. The group's involvement in the litigation thus far is minimal, consisting of a single conference call – presumably orchestrated by counsel – occurring on June 10, 2021, the eve of the Lead Plaintiff application filing

---

[3] *See, e.g., Haideri v. Jumei Int'l Holding Ltd*., 2020 WL 5291872, at *3 (N.D. Cal. Sept. 4, 2020) (rejecting artificial group); *Isaacs v. Musk*, 2018 WL 6182753, at *2 (N.D. Cal. Nov. 27, 2018) (same).

deadline. Moreover, the group's plans for cooperation are entirely vague, as they have offered no coherent plan for dividing responsibilities, managing the litigation, and resolving potential conflicts. Finally, that this attorney-engineered group consists of "institutional investors" is of no moment, as courts consistently reject artificial institutional investor groups formed by lawyers for purposes of obtaining lead plaintiff.[4]

Further, as explained below, Baltimore Employees' PSLRA certification is deficient and its attempt to assert claims assigned from Baltimore F&P raises unique defenses and additional inefficiency risks. Accordingly, the Retirement Systems group is plainly not suitable to be appointed as lead plaintiff in this action.

Finally, the remaining competing movant, Mollo-Branca, even if grouped, claims a far smaller financial interest in the litigation than Mr. Sepulveda. Moreover, none has come forward with facts, let alone "proof," that Mr. Sepulveda will not fairly and adequately protect the interests of the class, or that he is subject to any unique defense. Nor can they. The record reflects Mr. Sepulveda is supremely qualified to lead the prosecution of this case. Accordingly, the Court should appoint Mr. Sepulveda Lead Plaintiff and approve his choice of counsel.

## II.   ARGUMENT

### A.   The Court Should Remain Skeptical of Lawyer-Engineered Groups

In determining each proposed lead plaintiff's financial interest in the litigation, courts consider first and foremost the amount of their respective losses. *See, e.g., Musk*, 2018 WL 6182753, at *2. Here, the Retirement Systems seek "group" treatment in order to aggregate their three members' individual losses for purposes of this determination. In the aggregate, the members of the Retirement Systems group purportedly suffered LIFO losses of $1,330,943.00, which if accepted, would give the Retirement Systems the largest claimed financial interest in this case.

Although the PSLRA expressly permits the Court to appoint a "group of persons" to serve as lead plaintiff, many courts, including this Court, are "skeptical" of such arrangements when they are

---

[4] *See, e.g., In re Petrobras Sec. Litig.*, 104 F. Supp. 3d 618, 622 (S.D.N.Y. 2015) (rejecting lawyer-driven artificial grouping of institutional investors); *In re Enron Corp. Sec. Litig.*, 206 F.R.D. 427, 455 (S.D. Tex. 2002) (same).

OPP. TO COMP. MOTS. TO CONSOL. REL. CASES, APPOINT LEAD PL. AND APPROVE COUNSEL          - 3
Case No.: 3:21-cv-02623-EMC
010998-11/1563905 V1

the product of an artificial grouping designed merely to qualify as lead plaintiff under the PSLRA.[5] Congress's express purpose in mandating that the lead plaintiff (if otherwise qualified) be appointed on the basis of financial interest was to "transfer primary control of private securities litigation from lawyers to investors." S. REP. 104-98, at 6 (1995), reprinted in 1995 U.S.C.C.A.N. 679, 685; *see also* H.R. CONF. REP. 104-369, at 32 (1995), reprinted in 1995 U.S.C.C.A.N. 730, 731 (stating that the PSLRA "protects investors who join class actions against lawyer-driven lawsuits by giving control of the litigation to lead plaintiffs with substantial holdings of the securities of the issuer").

Allowing unrelated plaintiffs to band together in order to manufacture a larger financial interest runs counter to the PSLRA. Instead, artificial grouping ensures that the lawyers, who engineered the grouping, are the true drivers of the litigation.[6] Moreover, allowing for appointment of lawyer-engineered groups may lead to serious inefficiency risks, such as problems of coordination, duplication of effort, and it reduces the incentive of any individual group member to carry out its lead plaintiff duties to the fullest extent.[7]

Accordingly, courts regularly require proposed lead plaintiff "groups" to demonstrate their ability to function as a cohesive and independent unit to protect the interests of the class. Relevant considerations include whether the group's members have a pre-existing relationship, whether they have cooperated effectively thus far, and whether they have a coherent plan for dividing responsibilities, resolving conflicts, and managing the litigation. *See Jumei*, 2020 WL 5291872, at *3;

---

[5] *Jumei*, 2020 WL 5291872, at *3 (rejecting artificial group); *Musk*, 2018 WL 6182753, at *2 (same); *see also In re E.Spire Commc'ns. Sec. Litig.*, 231 F.R.D. 207, 213 (D. Md. 2000) (stating that, although a group can be appointed lead plaintiff, it "should consist of more than a mere assemblage of unrelated persons who share nothing other than the fact that they suffered losses and entered into retainer agreements with the same attorneys").

[6] *Eichenholtz v. Verifone Holdings, Inc.*, 2008 WL 3925289, at *8, (N.D. Cal. Aug. 22, 2008) (Appointing a lawyer-engineered group would "undercut[ ] the primary purpose of the PSLRA: to eliminate lawyer-driven litigation."); *see also Brady v. Top Shops Inc.*, 324 F. Supp. 3d 335, 345 (E.D.N.Y. 2018) (noting that "'[o]ne of the principal legislative purposes of the PSLRA was to prevent lawyer-driven litigation'").

[7] *Petrobras*, 104 F. Supp. 3d at 622; *see also In re Bally Total Fitness Sec. Litig.*, 2005 WL 627960, at *2 (N.D. Ill. Mar. 15, 2005) (allowing for appointment of lawyer-engineered groups may lead to "unintended results" such as "generat[ing] a flurry of otherwise pointless activity that adds nothing to the prompt and fair resolution of disputes" and "creat[ing] powerful incentives for lawyers competing to represent the class to solicit clients.").

OPP. TO COMP. MOTS. TO CONSOL. REL. CASES, APPOINT LEAD PL. AND APPROVE COUNSEL        - 4
Case No.: 3:21-cv-02623-EMC
010998-11/1563905 V1

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 392 (S.D.N.Y. 2008); *Brady*, 324 F. Supp. 3d at 345.

After weighing these factors, a plaintiff group will generally be rejected if the court determines that it is "simply an artifice cobbled together by cooperating counsel for the obvious purpose of creating a large enough grouping of investors to qualify as 'lead plaintiff.'" *In re Razorfish, Inc. Sec. Litig.*, 143 F. Supp. 2d 304, 308 (S.D.N.Y. 2001). An attorney-engineered group consisting of "institutional investors" does not change this result. Courts routinely refuse to appoint an artificial institutional investor group formed by lawyers for purposes of obtaining lead plaintiff.[8]

**B.    The Retirement Systems Have Failed to Demonstrate Their Ability to Act as a Cohesive and Independent Unit**

Here, as set for the below, the relevant factors largely weigh against appointment of the Retirement Systems.

**1.    The Retirement Systems Have No Pre-Litigation Relationship.**

The three members of the Retirement Systems group hail from different locations scattered across the Northeast: Baltimore, Philadelphia, and Plymouth. In turn, they manage distinct pension funds that invested, independently, in Fibrogen securities. Additionally, the three Retirement Systems have no prior connection beyond common membership in certain professional organizations. *See* ECF No. 30-4 at ¶ 5. *Petrobras*, 104 F. Supp. 3d at 622 (holding that institutional investors' membership in common professional organization was not a meaningful pre-litigation relationship.). However, there is no indication from the Joint Declaration that the members engaged with one another in any significant way through these organizations or otherwise. *See* ECF No. 30-4.

Most importantly, there is no evidence that they, on their own initiative, assembled themselves into a group prior to interaction with counsel. In fact, the Retirement Systems fail to articulate any reason or need for a group in this case. Nor do they state any benefit that would inure to the class by having three investors serve as lead plaintiff, instead of one. The Retirement Systems' failure to assert

---

[8] *See, e.g., Petrobras*, 104 F. Supp. 3d at 622 (rejecting two artificial groups of institutional investors); *Enron.*, 206 F.R.D. at 455 (S.D. Tex. 2002) (rejecting artificial group of institutional investors).

any rationale justifying the appointment of a group as lead plaintiff makes it crystal clear that the aggregation of losses was for the "obvious purpose of creating a large enough grouping of investors to qualify as 'lead plaintiff.'" *See In re Cendant Corp*., 264 F.3d 201, at 267 (3rd Cir. 2001), citing *Razorfish, Inc*, 143 F. Supp. 2d at 307-8.

### 2. The Retirement Systems Have Exhibited Minimal Cooperation Thus Far.

The group's involvement in the litigation thus far is minimal. No member of the group initiated any of the existing actions, and the Joint Declaration does not describe any work the group has done in identifying or investigating the Class' claims in this action. Instead, the total contact the group has had thus far is a conference call – presumably organized by counsel – occurring on June 10, 2021, one day before the Lead Plaintiff application filing deadline. *See* ECF No. 30-4 at ¶¶ 10-12; *Musk*, 2018 WL 6182753, at \*3 (noting lack of coordination as group since it had only participated in one joint call before filing a lead plaintiff application).

### 3. The Retirement Systems Have No Coherent Plan for Managing the Litigation.

Finally, while the Retirement Systems suggest that they will be able to work together well, efficiently, and so forth, there is nothing concrete to back that up. *Musk*, 2018 WL 6182753, at \*3. For example, the Retirement Systems do not articulate any plan for division of authority or responsibility among the members for the critical aspects of the case, including which member or members will be responsible for supervising the various portions of the litigation, including fact and witness investigation, drafting of the pleadings, motion practice, discovery, trial planning and strategy, or settlement. The lack of a cohesive plan foreshadows "problems of coordination, risks duplication of effort, and reduces the incentive of any individual group member to carry out its lead plaintiff duties to the fullest extent." *Petrobras*, 104 F. Supp. 3d at 622.

Also, the decision-making structure is weak on details. ECF No. 30-4 at ¶ 11 ("our intention [is] to make all decisions jointly," "We do not anticipate that any disagreements between us will arise," "In the event that such a disagreement arises, we agree to resolve such disagreement by a majority vote, in which each of us possesses one vote."). This Court found nearly identical, generic recitals to reflect a non-robust decision-making structure. *See Musk*, 2018 WL 6182753, at \*3.

Further, the Retirement Systems do not describe any protocols they have put in place to deal with potential conflicts. For instance, the Retirement Systems do not claim to have negotiated a single retainer with counsel as a group, leaving open the likely possibility that they have three separate retainer agreements with discrepancies concerning how much fees counsel may seek should a resolution be reached. *See Petrobras*, 104 F. Supp. 3d at 623 (finding that discrepancies in group members' retainer agreements demonstrated that group would act with the cohesion necessary to prosecute the case effectively).

For these reasons, the Retirement Systems have failed to show that they would act with the cohesion necessary to prosecute the case effectively. Accordingly, the Retirement Systems group is not suitable to be appointed as lead plaintiff.

**C.     Baltimore Employees Is Subject to Unique Defenses**

In addition to the concerns described above, Baltimore Employees is subject to various unique defenses as a result of its effort to assert claims purportedly assigned by Baltimore F&P.

First, Baltimore Employees' PSLRA certification is flawed. Specifically, the certification affirms both Baltimore Employees' and Baltimore F&P's class period transactions and includes sworn representations concerning the accuracy and nature of these transactions. But the certification is executed by only one individual, David Randall. While Mr. Randall indicates that he is the Executive Director of Baltimore Employees, he does not indicate that he had any role with Baltimore F&P during the Class Period, or any basis for making such representations. Accordingly, the certification is invalid. *See Steamfitters Loc. 449 Pension Fund v. Cent. Eur. Distrib. Corp.*, 2012 WL 3638629, at *12 (D.N.J. Aug. 22, 2012) (denying lead plaintiff applicant's motion since it likely "would be subject to a unique defense regarding invalid or lack of certification because the validity of their purported certification is fairly debatable.").

Second, there are serious questions concerning the enforceability of the purported assignment of Baltimore F&P's claims. For example, a core provision of the assignment is Baltimore F&P purportedly appointing Baltimore Employees as its true and lawful attorney-in-fact for the purpose of exercising all powers relating to Baltimore F&P's causes of action. ECF No. 30-5 at ¶ 4. However,

under Maryland law, which presumably governs the assignment agreement, any power of attorney agreement must be "acknowledged by the principal *before a notary public*" and "attested and signed by *two or more adult witnesses* who sign in the presence of the principal and in the presence of each other." *See* Md. Code, Estates & Trusts § 17-110.[9] Here, the assignment agreement is neither notarized nor attested by witnesses, rendering the power of attorney provision unenforceable. Accordingly, should the Retirement Systems be appointed lead plaintiff, whether Baltimore Employees is even authorized to act on behalf of Baltimore F&P in prosecuting and resolving the causes of action will likely become a major focus of the litigation. *See, e.g., In re SLM Corp. Sec. Litig*., 258 F.R.D. 112, 116 (S.D.N.Y. 2009) (uncertainties presented by assignment of claims rendered investor inadequate or atypical since "it faces unique legal issues that other class members do not.").

Finally, even assuming the assignment is enforceable, Baltimore Employees undisputedly stands in the shoes of Baltimore F&P and is therefore subject to any defense which Defendants had against Baltimore F&P prior to the assignment. Thus, if the Retirement Systems were appointed lead plaintiff, Defendants' discovery will focus on not only on three members' knowledge and trading strategies, but Baltimore F&P's knowledge and reliance on Defendants' alleged false and misleading statements as well. But Baltimore Employees has provided no assurance that it is in possession of Baltimore F&P's discoverable materials, or that it can otherwise control Baltimore F&P's cooperation for purposes of the litigation. This creates a risk for side-show discovery disputes over the assignor's materials. *See, e.g., J.P. Morgan Chase Bank v. Winnick*, 228 F.R.D. 505 (S.D.N.Y.2005) (discovery

---

[9] Md. Code, Estates & Trusts § 17-110 states:

  (a)   A power of attorney executed on or after October 1, 2010, shall be:

   (1)   In writing;

   (2)   Signed by the principal or by some other person for the principal, in the presence of the principal, and at the express direction of the principal;

   (3)   Acknowledged by the principal before a notary public; and

   (4)    Attested and signed by two or more adult witnesses who sign in the presence of the principal and in the presence of each other.

  (b)   The notary public before whom the principal acknowledges the power of attorney may also serve as one of the two or more adult witnesses unless the notary public is using communication technology under § 18-214 of the State Government Article to perform the notarial act for a remotely located principal.

dispute stemming from assignee's inability to produce discoverable materials in assignor's possession); *Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co*., 314 F.R.D. 341, 344 (S.D.N.Y. 2016) (same).

In short, these unique defenses underscore the "unintended results" that will occur should the Retirement Systems be appointed lead plaintiff, including "generat[ing] a flurry of otherwise pointless activity that adds nothing to the prompt and fair resolution of disputes." *Bally*, 2005 WL 627960, at *2.

**D.    Mr. Sepulveda is the Presumptive Lead Plaintiff**

In contrast to the Retirement Systems, Mr. Sepulveda is the ideal lead plaintiff. He has suffered more than $940,000 in LIFO losses as a result of Defendants' alleged wrongdoing. Moreover, unlike other of the movants, Mr. Sepulveda moved individually and has selected only one law firm to serve as counsel for the class, a decision which will inure to the entire class's benefit by reducing costs and expenses. Mr. Sepulveda declined to join a plaintiff group because he wished to retain his independence. In addition, Mr. Sepulveda vetted his chosen counsel. ECF No. 23-4 at ¶¶ 6-7. "[O]ther than pointing out its relatively low[er] financial stake in the litigation," it is unlikely that the other movants will make any argument against Mr. Sepulveda's appointment. *Tsirekidze v. Syntax-Brillian Corp*., 2008 WL 942273, at *5 (D. Ariz. Apr. 7, 2008).

Because Mr. Sepulveda has the largest financial interest and satisfies the requirements of Rule 23, he is the presumptive lead plaintiff. To overcome the strong presumption of appointing Mr. Sepulveda as Lead Plaintiff, the PSLRA requires "proof" that the presumptive lead plaintiff is inadequate. *See* 15 U.S.C. § 78u- 4(a)(3)(B)(iii)(II). Here, no such proof exists in this case and there can be no credible arguments to the contrary.

**E.    Mr. Sepulveda Selected Well-Qualified Lead Counsel To Represent The Class**

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to the Court's approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). In making this determination, the PSLRA states that a court is not to disturb the lead plaintiff's choice of counsel unless it is necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

Here, Hagens Berman is a leading securities class action law firm and has an established track record obtaining successful recoveries for investors in securities class actions. *See* ECF No. 23-5 at 31-32. Accordingly, the Court may be assured that by granting this Motion, the Class will receive the highest caliber of legal representation.

### III.   CONCLUSION

For all the foregoing reasons, Mr. Sepulveda respectfully requests that this Court: (1) consolidate the Related Actions; (2) appoint him to serve as lead plaintiff in this action; (3) approve his selection of Hagens Berman as lead counsel for the Class; and (4) grant such other and further relief as the Court may deem just and proper.

Respectfully submitted,

Dated: June 25, 2021

HAGENS BERMAN SOBOL SHAPIRO LLP

By:   */s/ Lucas E. Gilmore*
LUCAS E. GILMORE

Reed R. Kathrein (139304)
Lucas E. Gilmore (250893)
Danielle Smith (291237)
Wesley A. Wong (314652)
715 Hearst Avenue, Suite 202
Berkeley, CA  94710
Telephone: (510) 725-3000
Facsimile:  (510) 725-3001
reed@hbsslaw.com
lucasg@hbsslaw.com
danielles@hbsslaw.com
wesleyw@hbsslaw.com

Steve W. Berman (*pro hac vice* forthcoming)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile:  (206) 623-0594
steve@hbsslaw.com

*Attorneys for [Proposed] Lead Plaintiff Vicente Sepulveda and [Proposed] Lead Counsel*