**SAXENA WHITE P.A.**
David R. Kaplan (SBN 230144)
dkaplan@saxenawhite.com
12750 High Bluff Drive, Suite 475
San Diego, California 92130
Telephone:     (858) 997-0860
Facsimile:     (858) 369-0096

*Counsel for Employees' Retirement System of the*
*City of Baltimore, City of Philadelphia Board of*
*Pensions and Retirement, and Plymouth County*
*Retirement Association, and Proposed Lead*
*Counsel for the Class*

*[Additional Counsel Listed on Signature Page]*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| PEIFA XU, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> FIBROGEN, INC., ENRIQUE CONTERNO, JAMES SCHOENECK, and K. PEONY YU, <br><br> Defendants. | No. 3:21-cv-02623-EMC <br><br> <u>**CLASS ACTION**</u> <br><br> **REPLY MEMORANDUM IN FURTHER SUPPORT OF THE MOTION OF EMPLOYEES' RETIREMENT SYSTEM OF THE CITY OF BALTIMORE, CITY OF PHILADELPHIA BOARD OF PENSIONS AND RETIREMENT, AND PLYMOUTH COUNTY RETIREMENT ASSOCIATION FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF SELECTION OF COUNSEL, AND IN OPPOSITION TO THE COMPETING MOTIONS** <br><br> HEARING DATE: July 22, 2021 <br> TIME: 1:30 p.m. <br> JUDGE: Hon. Edward M. Chen <br> COURTROOM: 5 – 17th Floor |

| | |
|---|---|
| ROBERT GUTMAN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>FIBROGEN, INC., ENRIQUE CONTERNO, and JAMES SCHOENECK,<br><br>Defendants. | No. 3:21-cv-02725-YGR<br><br>Judge Yvonne Gonzalez Rogers<br><br>**CLASS ACTION** |
| CESARE GRAZOLI, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>FIBROGEN, INC., ENRIQUE CONTERNO, JAMES SCHOENECK, and K. PEONY YU,<br><br>Defendants. | No. 3:21-cv-03212-CRB<br><br>Judge Charles R. Breyer<br><br>**CLASS ACTION** |
| THOMAS LEONARD, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>FIBROGEN, INC., ENRIQUE CONTERNO, JAMES SCHOENECK, and K. PEONY YU,<br><br>Defendants. | No. 5:21-cv-03370-BLF<br><br>Judge Beth Labson Freeman<br><br>**CLASS ACTION** |
| IBEW LOCAL 353 PENSION PLAN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>FIBROGEN, INC., ENRIQUE CONTERNO, JAMES SCHOENECK, and K. PEONY YU,<br><br>Defendants. | No. 5:21-cv-03396-EJD<br><br>Judge Edward J. Davila<br><br>**CLASS ACTION** |

**TABLE OF CONTENTS**

I. INTRODUCTION ............................................................................................................. 1

II. ARGUMENT ................................................................................................................... 2

 A. The Retirement Systems Are the Presumptive Lead Plaintiff, And The Competing Movants Have Not Offered Any "Proof" To Rebut The Presumption ............................................................................................................. 2

  1. The Retirement Systems' Financial Interest Is The Largest Of Any Movant Whether Viewed Collectively Or Individually .............................. 2

  2. The Retirement Systems Are An Ideal Lead Plaintiff Group, And Opposing Movants Have Not Provided A Shred Of Evidence To Rebut Their Showing Of Adequacy And Typicality ................................. 3

   a. Aggregation Of The Retirement Systems' Losses Is Entirely Appropriate ........................................................................ 3

   b. The Retirement Systems Have Demonstrated Cohesion And Their Ability To Effectively Control The Litigation ........................... 4

   c. Baltimore Employees' Assignment From Baltimore F&P Is Valid And Proper ....................................................................... 9

 B. The Competing Movants Do Not Have The Largest Financial Interest And, Regardless, Suffer From Numerous Disqualifying Factors ........................ 12

  1. Sepulveda Lacks The Largest Financial Interest And Suffers From Numerous Fatal Deficiencies .................................................................. 12

  2. The Branca Group Also Lacks The Largest Financial Interest And Suffers From Numerous Fatal Deficiencies .............................................. 14

III. CONCLUSION ............................................................................................................. 15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*Boynton Beach Firefighters' Pension Fund v. HCP, Inc.*,
No. 3:16-cv-1106, 2017 WL 5759361 (N.D. Ohio Nov. 28, 2017)...................................... 10, 12

*Camp v. Qualcomm Inc.*,
No. 18-cv-1208, 2019 WL 277360 (S.D. Cal. Jan. 22, 2019) ..................................................... 15

*Cohen v. Luckin Coffee Inc.*,
No. 1:20-cv-01293, 2020 WL 3127808 (S.D.N.Y. June 12, 2020) ............................................. 7

*Cook v. Allergan plc*,
No. 18-cv-12089, 2019 WL 1510894 (S.D.N.Y. Mar. 21, 2019)............................................. 13

*Doherty v. Pivotal Software, Inc.*,
No. 3:19-cv-03589-CRB, 2019 WL 5864581 (N.D. Cal. Nov. 8, 2019)..................................... 3

*Dura Pharmaceuticals, Inc. v. Broudo*,
544 U.S. 336 (2005) ................................................................................................................ 2

*Faris v. Longtop Fin. Techs. Ltd.*,
No. 11-cv-3658, 2011 WL 4597553 (S.D.N.Y. Oct. 4, 2011)............................................. 10, 11

*Galmi v. Teva Pharms. Indus. Ltd.*,
302 F. Supp. 3d 485 (D. Conn. 2017) .................................................................................. 4, 8

*Haideri v. Jumei Int'l Holding Ltd.*,
No. 20-cv-02751-EMC, 2020 WL 5291872 (N.D. Cal. Sept. 4, 2020) ......................... 5, 6, 7, 9

*Hevesi v. Citigroup, Inc.*,
366 F.3d 70 (2d Cir. 2004)..................................................................................................... 13

*Hodges v. Akeena Solar, Inc.*,
263 F.R.D. 528 (N.D. Cal. 2009)............................................................................................. 4

*In re Aqua Metals Sec. Litig.*,
No. 17-cv-07142-HSG, 2018 WL 4860188 (N.D. Cal. May 23, 2018)..................................... 6

*In re Bank of America Corp. Sec. Derivative & ERISA Litig.*,
No. 09-md-2058, 2013 WL 1558686 (S.D.N.Y. Apr. 11, 2013)............................................... 3

*In re Boeing Co. Aircraft Sec. Litig.*,
No. 19-cv-02394, 2020 WL 476658 (N.D. Ill. Jan. 28, 2020)................................................. 15

*In re Carrier IQ Consumer Privacy Litigation,*
No. 12-md-2330 EMC (N.D. Cal.) ........................................................................................... 5

*In re Cavanaugh,*
306 F.3d 726 (9th Cir. 2002) .................................................................................................... 1

*In re Cendant Corp., Litig.,*
264 F.3d 201 (3d Cir. 2001) ................................................................................................. 3, 14

*In re Enron Corp. Sec. Litig.,*
206 F.R.D. 427 (S.D. Tex. 2002) ............................................................................................. 8

*In re Lehman Brothers Equity/Debt Sec. Litig.,*
No. 08-cv-5523 (S.D.N.Y) ....................................................................................................... 3

*In re Muni. Mortg. & Equity, LLC, Sec. and Derivative Litig,*
No. 08-md-1961, 2008 WL 11363288 (D. Md. Nov. 17, 2008) ............................................... 9

*In re Petrobras Sec. Litig.,*
104 F. Supp. 3d 618 (S.D.N.Y. 2015) ..................................................................................... 8

*In re SLM Corp. Securities Litigation,*
258 F.R.D. 112 (S.D.N.Y. 2009) ........................................................................................... 10

*In re Vaxart, Inc. Sec. Litig.,*
No. 3:20-cv-05949-VC (N.D. Cal.) .......................................................................................... 5

*In re Versata, Inc., Sec. Litig.,*
No. 01-cv-1439 SI, 2001 WL 34012374 (N.D. Cal. Aug. 20, 2001) ...................................... 14

*In re Vocera Comms., Inc. Sec. Litig.,*
No. 3:13-cv-03567-EMC (N.D. Cal. Nov. 20, 2013) ................................................................ 1

*In re XM Satellite Radio Holdings Sec. Litig.,*
237 F.R.D. 13 (D.D.C. 2006) .................................................................................................. 13

*Inchen Huang v. Depomed, Inc.,*
289 F. Supp. 3d 1050 (N.D. Cal. 2017) .................................................................................... 3

*Isaacs v. Musk,*
No. 18-cv-4865-EMC, 2018 WL 6182753 (N.D. Cal. Nov. 27, 2018) ................................. 5, 6

*McCracken v. Edwards Lifesciences Corp.,*
No. 8:13-cv-1463-JLS (RNBx), 2014 WL 12694135 (C.D. Cal. Jan. 8, 2014) ........................ 4

*Med. Mut. Liab. Ins. Soc. of Md. v. Evans,*
330 Md. 1, 622 A.2d 103 (1993) ............................................................................................ 10

*Minneapolis Firefighters' Relief Ass'n v. Medtronic, Inc.*,
   No. 08-cv-6324, 2009 WL 1458234 (D. Minn. May 26, 2009)................................................ 10

*Nakamura v. BRF S.A.*,
   No. 18-cv-2213, 2018 WL 3217412 (S.D.N.Y. July 2, 2018).................................................... 15

*Nasin v. Hongli Clean Energy Techs. Corp.*,
   No. 2:17-cv-3244, 2017 WL 5598214 (D.N.J. Nov. 21, 2017) ................................................ 14

*Northstar Fin. Advisors Inc. v. Schwab Invs.*,
   779 F.3d 1036 (9th Cir. 2015)................................................................................................... 11

*Query v. Maxim Integrated Prod., Inc.*,
   558 F. Supp. 2d 969 (N.D. Cal. 2008) ........................................................................................ 3

*Rieckborn v. Velti plc*,
   No. 13-cv-03889-WHO, 2013 WL 6354597 (N.D. Cal. Dec. 3, 2013).............................. 10, 12

*Sokolow v. LJM Funds Mgmt., Ltd.*,
   No. 18-cv-01039, 2018 WL 3141814 (N.D. Ill. June 26, 2018)......................................... 10, 11

*Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*,
   554 U.S. 269 (2008) ................................................................................................................. 11

*Steamfitters Local 449 Pension Fund v. Central European Distribution Corp.*,
   No. 11-cv-6247, 2012 WL 3638629 (D.N.J. Aug. 22, 2012) .................................................... 12

*Titus v. Wallick*,
   306 U.S. 282 (1939)................................................................................................................... 11

*Vitiello v. Bed Bath & Beyond, Inc.*,
   No. 2:20-cv-04240, 2020 WL 4783438 (D.N.J. Aug. 14, 2020) .............................................. 11

*W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*,
   549 F.3d 100 (2d Cir. 2008)...................................................................................................... 11

*Woburn Ret. Sys. v. OmniVision Techs., Inc.*,
   No. 11-cv-05235-RMW, 2012 U.S. Dist. LEXIS 21590 (N.D. Cal. Feb. 21, 2012)............... 3, 4

**STATUTES**

15 U.S.C. § 78u-4(a) ....................................................................................................... 12, 14

28 U.S.C. § 1746 ................................................................................................................... 14

**OTHER AUTHORITIES**

H.R. Conf. Rep. No. 104-369 (1995)....................................................................................... 7

RETIREMENT SYSTEMS' REPLY TO COMPETING
MOTIONS FOR LEAD PLAINTIFF APPOINTMENT
CASE NO. 3:21-CV-02623-EMC

## I.     INTRODUCTION

The Retirement Systems, with a loss of over $1.3 million and a *Dura* loss of over $1.2 million, have—undisputedly—the largest financial interest in the litigation.[1]



To supplant the Retirement Systems' status as presumptive lead plaintiff requires *proof* of their inadequacy and atypicality.  *In re Cavanaugh,* 306 F.3d 726, 729, n.2 (9th Cir. 2002).  This proof is nonexistent.  While Sepulveda and Branca and Mollo (the "Branca Group") claim that the Retirement Systems are an impermissible group, in fact the opposite is true: hundreds of courts across the country, including this Court, have appointed small cohesive groups of institutions exactly like the Retirement Systems as lead plaintiff, and in so doing have explicitly recognized that such groups constitute the ideal lead plaintiff pursuant to the PSLRA.

Moreover, the Retirement Systems' members—all sophisticated pension funds that collectively manage over $8.5 billion in retirement assets—have provided detailed information about their backgrounds, their decision to work together, their previous successes serving as lead plaintiff in other cases, and the steps they have taken together (and continue to take) to ensure the Class achieves the best possible result.  *See* ECF No. 30-4.  The appointment of three sophisticated institutional investors upon such a record is not only plainly appropriate but preferred.

---

[1] Unless otherwise noted, all capitalized terms have the meanings ascribed in the Retirement Systems' prior briefs (ECF Nos. 29 and 52), all emphasis is added, and citations are omitted.

RETIREMENT SYSTEMS' REPLY TO COMPETING
MOTIONS FOR LEAD PLAINTIFF APPOINTMENT
CASE NO. 3:21-CV-02623-EMC

As for the competing movants, not only do Sepulveda and the Branca Group possess smaller financial interests, they also are subject to myriad disqualifying deficiencies. Sepulveda suffers from a plethora of issues—any one of which renders him legally atypical. These include his status as a net seller *and* net gainer, his highly unusual rapid-fire trading pattern, his prolific and problematic internet posts about the Company, and the lack of any causal connection between the vast majority of his losses and the fraud. The Branca Group fares no better. In addition to having a much smaller loss, the Branca Group consists of Italian nationals who are distant family members and have provided grossly deficient evidence of their adequacy to lead this complex action.

## II.    ARGUMENT

### A. THE RETIREMENT SYSTEMS ARE THE PRESUMPTIVE LEAD PLAINTIFF, AND THE COMPETING MOVANTS HAVE NOT OFFERED ANY "PROOF" TO REBUT THE PRESUMPTION

#### 1. The Retirement Systems' Financial Interest Is The Largest Of Any Movant Whether Viewed Collectively Or Individually

The opposition briefing confirms that the Retirement Systems' financial interest is significantly larger than that of *any* competing movant under *any* test submitted for the Court's consideration. The following is undisputed:

- *Losses*. The Retirement Systems incurred a total loss of over $1.3 million on their Class Period purchases of FibroGen common stock, nearly ***triple*** that of any competing movant. Even including Sepulveda's options losses—the vast majority of which came from unrecoverable "in-and-out" transactions, the Retirement Systems' losses still surpass Sepulveda by nearly ***$400,000***.

- ***Dura*** **Losses**. The Retirement Systems have the largest financial interest by far under a *cognizable* loss analysis applying the loss causation principles in *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005). More than 90% of the Retirement Systems' losses withstand a *Dura* analysis—which, the Branca Group admits, amounts to upwards of $1.2 million. This is ***2.5 times*** more than the Branca Group's own *Dura* loss, and approximately ***8.5 times*** Sepulveda's *Dura* loss.

- ***Net Shares Purchased/Net Funds Expended***. The Retirement Systems easily have the largest financial interest under the two other *Lax* factors commonly utilized by courts: net shares purchased and net funds expended. Specifically, the Retirement Systems have over ***2 times*** the number of net shares purchased and over ***4 times*** the amount of net funds expended by the Branca Group, the movant with the next largest net purchases/net expenditures. The other movant, Sepulveda, is *per se* disqualified as both a "net seller" and a "net gainer" in FibroGen stock.

Moreover, a single member of the Retirement Systems, Baltimore Employees, has a larger financial interest than *any* competing movant under *any* of these tests.  When viewed in isolation, Baltimore Employees alone suffered $505,254 in losses—*all* of which are cognizable under *Dura*—and had 23,120 in net shares purchased and $961,971 in net funds expended.  These figures easily exceed those of Sepulveda and the Branca Group.

**2.  The Retirement Systems Are An Ideal Lead Plaintiff Group, And Opposing Movants Have Not Provided A Shred Of Evidence To Rebut Their Showing Of Adequacy And Typicality**

The PSLRA expressly permits the appointment of a "group" of class members as lead plaintiff, particularly when they are comprised of institutional investors. 15 U.S.C. § 78u4(a)(3)(B).  Indeed, most of the largest securities fraud settlements, representing tens of billions of dollars in recoveries, were achieved by similar combinations.[2]  Courts in this District and elsewhere routinely appoint similar lead plaintiffs upon a showing they are "a cohesive group that will adequately represent all class members." *Doherty v. Pivotal Software, Inc.*, No. 3:19-cv-03589-CRB, 2019 WL 5864581, at *11 (N.D. Cal. Nov. 8, 2019) (appointing two institutional investors); *In re Vocera Comms., Inc. Sec. Litig.*, No. 3:13-cv-03567-EMC (ECF No. 61) (N.D. Cal. Nov. 20, 2013) (appointing two institutional investors); *Woburn Ret. Sys. v. OmniVision Techs., Inc.*, No. 11-cv-05235-RMW, 2012 U.S. Dist. LEXIS 21590, at *13 (N.D. Cal. Feb. 21, 2012) (appointing three institutional investors); *Query v. Maxim Integrated Prod., Inc.*, 558 F. Supp. 2d 969, 974 (N.D. Cal. 2008) (appointing three institutional investors).

**a.  Aggregation Of The Retirement Systems' Losses Is Entirely Appropriate**

Any argument that the Retirement Systems are an "attorney-engineered" group that may not aggregate losses is completely without merit. *See* ECF No. 50, at 5 and ECF No. 51, at 2.  The argument collapses out of the gate because Baltimore Employees *alone* has a larger financial interest than *any* competing movant. *See, e.g.*, *Inchen Huang v. Depomed, Inc.*, 289 F. Supp. 3d

---

[2] *See e.g.*, *In re Cendant Corp., Litig.*, 264 F.3d 201, 217 (3d Cir. 2001) ($3.2 billion recovery by group of three institutions); *In re Bank of America Corp. Sec. Derivative & ERISA Litig.*, No. 09-md-2058, 2013 WL 1558686, at *1-2 (S.D.N.Y. Apr. 11, 2013) ($2.45 billion recovery by group of five institutions); *In re Lehman Brothers Sec. & Erisa Litig.*, No. 09-md-2017 (S.D.N.Y.) ($735 million recovery by group of five institutions).

RETIREMENT SYSTEMS' REPLY TO COMPETING
MOTIONS FOR LEAD PLAINTIFF APPOINTMENT
CASE NO. 3:21-CV-02623-EMC

1050, 1055 (N.D. Cal. 2017) (appointing movant group whose member had the "greatest financial stake in the litigation of any movant"); *McCracken v. Edwards Lifesciences Corp.*, No. 8:13-cv-1463-JLS (RNBx), 2014 WL 12694135, at \*3 (C.D. Cal. Jan. 8, 2014) (concluding that institutional investor group had the largest financial interest because a member had the largest individual loss); *OmniVision*, 2012 U.S. Dist. LEXIS 21590, at  \*13 (appointing lead plaintiff group where "one of its members alone . . . ha[d] a larger [financial] stake than any other individual plaintiff"); *Hodges v. Akeena Solar, Inc.*, 263 F.R.D. 528, 533 (N.D. Cal. 2009) (same).  Cases the other movants cite reinforce this point, acknowledging that "courts are more willing to permit a group of unrelated investors if the group contains the investor that on its own would otherwise be entitled to the status as presumptive lead plaintiff."  *See Galmi v. Teva Pharms. Indus. Ltd.*, 302 F. Supp. 3d 485, 496 (D. Conn. 2017).

Further, aggregation of the Retirement Systems' losses is also entirely appropriate because, as discussed below, the Retirement Systems have more than satisfied their burden to make a preliminary showing of adequacy—both quantitatively and qualitatively.

**b.  The Retirement Systems Have Demonstrated Cohesion And Their Ability To Effectively Control The Litigation**

Sepulveda and the Branca Group's conclusory assertions that insufficient collaboration between the Retirement Systems' members renders them inadequate is undermined by the Retirement Systems' initial Joint Declaration and the Supplemental Joint Declaration submitted herewith (collectively, the "Joint Declarations").  *See Akeena*, 263 F.R.D. at 533 ("[movant] provides no evidence to support his contention that the Akeena Investor Group is a lawyer-made artifice").  Specifically, the Joint Declarations demonstrate that the Retirement Systems will function efficiently and proactively as lead plaintiff.  In particular, the Joint Declarations describe:

- The Retirement Systems' sophistication and close geographic proximity, and the commitment of their principals under oath to engage with one another in a significant way to effectively oversee the prosecution of this action.  ECF No. 30-4 ¶¶ 2-4.

RETIREMENT SYSTEMS' REPLY TO COMPETING
MOTIONS FOR LEAD PLAINTIFF APPOINTMENT
CASE NO. 3:21-CV-02623-EMC

- The Retirement Systems' experience as fiduciaries overseeing billions of dollars in retirement assets and in vetting, hiring, and managing counsel in complex litigation, with "dedicated staffs of professionals" ready and able to assist in overseeing this litigation. *Id.* ¶¶ 2-5.

- The Retirement Systems' implementation of a clear and logical decision-making structure with established procedures, and communication with one another and exchange of contact details to facilitate future communication with—and without—counsel. *Id.* ¶¶ 10, 12.

- The Retirement Systems' established relationships with their counsel and joint determination to seek a leadership role in this action and work collaboratively as a small group of philosophically-aligned and experienced fiduciaries. *Id.* ¶¶ 8-10, 15.

- The Retirement Systems' tracking of the progress of the lead plaintiff motions, recent communications concerning specific protocols for overseeing counsel and controlling costs and expenses in light of this Court's Order in *In re Carrier IQ Consumer Privacy Litigation*, No. 12-md-2330 EMC (N.D. Cal.) (ECF Nos. 108, 110), and commitment, if appointed as lead plaintiff, to implementing the *Carrier IQ* guidelines.  Supp. Joint Decl. ¶¶ 5-7, Declaration of David R. Kaplan in Support of the Retirement Systems' Reply to the Competing Motions for Lead Plaintiff ("Kaplan Reply Decl."), Ex. A.

Thus, the affirmations in the Joint Declarations meet or exceed those found acceptable by this Court and within this District in appointing similar institutional groups. *See, e.g.*, *Vocera*, No. 3:13-cv-03567-EMC, ECF No. 42-3 ($9 million cash settlement) (Chen, J.); *Doherty,* No. 3:19-cv-03589-CRB, ECF No. 22-4; *Query*, No. 08-cv-00832 PVT, ECF No. 36-6; *OmniVision*, No. 11-cv-05235-RMW, ECF No. 77-4.[3]

The Court's opinions in *Tesla* and *Jumei* do not lead to a different conclusion, and, in fact, support appointment of the Retirement Systems as lead plaintiff. *See Isaacs v. Musk,* No. 18-cv-4865-EMC, 2018 WL 6182753 (N.D. Cal. Nov. 27, 2018) ("*Tesla*"); *Haideri v. Jumei Int'l Holding Ltd.*, No. 20-cv-02751-EMC, 2020 WL 5291872 (N.D. Cal. Sept. 4, 2020) ("*Jumei*").  While the Court in *Tesla* declined to appoint a movant group, the Court employed a pragmatic approach by

---

[3] Notably, the firms attacking the propriety of appointing a group have ***successfully*** moved for appointment of lead plaintiff groups in multiple prior cases in this District.  As but one example, last year, both counsel for the Branca Group ***and*** Sepulveda represented groups of unrelated individual investors, extolling the virtues of declarations far less robust than the one filed by the Retirement Systems here, leading to appointment of a group of two individuals.  *See In re Vaxart, Inc. Sec. Litig.*, No. 3:20-cv-05949-VC (N.D. Cal.), Kaplan Reply Decl., Exs. F and G.

RETIREMENT SYSTEMS' REPLY TO COMPETING
MOTIONS FOR LEAD PLAINTIFF APPOINTMENT
CASE NO. 3:21-CV-02623-EMC

questioning whether its members could effectively lead the case. 2018 WL 6182753 at *3. This qualitative analysis led to the rejection of a group of five multinational individual investors who were "strewn across the globe" and had highly disparate trading strategies. *Id.* at *3-4. This Court expressly noted that "***a pre-litigation relationship amongst group members is not required***," *id.* at *2, but rejected the group because one member, Andrew Left, was a high-profile short seller previously accused of issuing false and misleading statements and other misconduct, and a second member had been fined for insider trading. *Tesla,* ECF Nos. 107, at 17; 111, at 3; 115, at 8. Significantly, while the group's joint declaration provided a mechanism for voting, it left discretion in "emergency" situations for Mr. Left to act alone. ECF No. 51-4 ¶ 15. The Court's reluctance to appoint that group was unsurprising given the multiple substantive attacks on Mr. Left's adequacy.

Here, unlike *Tesla,* the competing movants do not question the individual adequacy or typicality of the Retirement Systems. Nor can they. All are experienced institutional investors located in close geographic proximity to one another with a common mandate of safeguarding their beneficiaries' retirement assets. *See* ECF No. 30-4, at ¶¶ 2-5. Each has exceptionally clean trading patterns that encompass all relevant portions of the Class Period and resulted in large, similarly sized losses. These are sophisticated institutions, the majority of which have undergone the rigors of class certification in previous securities fraud cases and have been certified as adequate representatives each and every time.[4] *See* ECF No. 30-4, ¶¶ 3-4 and 14.

This Court's opinion in *Jumei* further supports the Retirement Systems' position. In *Jumei,* the Court declined to appoint a group primarily consisting of Chinese nationals located in both China and Alabama. The group initially provided no declaration at all, and after repeated prompting by the Court, finally submitted a declaration that did not indicate that they "engaged with one another in any significant way." 2020 WL 5291872, at *4. Despite the Court's multiple efforts to "pull teeth" regarding their background, group formation, and decision-making structure, they failed to provide the detailed information required. *Id*. at *5.

---

[4] *See, e.g., In re Aqua Metals Sec. Litig.*, No. 17-cv-07142-HSG, 2018 WL 4860188, at *3 (N.D. Cal. May 23, 2018) (finding Plymouth County "particularly well suited" to serve in a lead plaintiff group).

Unable to draw a parallel between the *Jumei* group and the Retirement Systems here, opposing movants make the blanket argument that, under this Court's prior lead plaintiff decisions, all groups are "lawyer-driven" and that there should be no distinction between random individual investors and groups of public institutions when evaluating lead plaintiff motions. *See* ECF Nos. 50-51 at 3,6. But the distinction between groups of individuals, as opposed to individuals, ***must*** be made. In enacting the PSLRA, Congress expressed a clear preference for institutional investors because "increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions." *See* H.R. Conf. Rep. No. 104-369, at \*34 (1995), reprinted in 1995 U.S.C.C.A.N. 730, 733 (1995). Given the PSLRA's clear mandate, courts overwhelmingly favor institutional investors to serve as lead plaintiff.[5] *See, e.g.*, *Jumei*, 2020 WL 5291872 at \*5 ("The adequacy of Altimeo as a lead plaintiff is supported by the fact that it is an institutional investor."); *Cohen v. Luckin Coffee Inc.*, No. 1:20-cv-01293, 2020 WL 3127808, at \*5 (S.D.N.Y. June 12, 2020) (appointing a group of two institutional investors with no preexisting relationship over a group of individuals with a larger loss because among other factors, they were "institutional plaintiffs who have acted as fiduciaries" with billions of dollars in assets under management  and "track records of successfully serving in lead plaintiff groups").

Opposing movants collectively cite only three cases over a twenty-year period to support their misguided proposition that there is no distinction between individual versus institutional investor groups. Notably, ***none*** of these cases are from this Circuit and ***all*** involve extraordinary facts inapplicable here. In *Enron*, for example, the court found that one of the group's members "has issues and interests atypical and antagonistic" to the class because it purchased Enron stock (1) ***after*** the initial disclosure of massive accounting fraud; (2) ***after*** the commencement of multiple

---

[5] The preference for institutions has proven to be correct. Historically, 92 of the top 100 settlements of all time were achieved by institutional lead plaintiffs. *See* Kaplan Reply Decl., Ex. H (ISS Securities Class Action Services, The Top 100 U.S. Class Action Settlements of All Time (As of 31 December 2020), at 11 (2021)). And the trend continues. *See* Cornerstone Research, Securities Class Action Settlements-2020 Review and Analysis at 12, available at https://www.cornerstone.com/Publications/Reports/Securities-Class-Action-Settlements-2020-Review-and-Analysis (noting that during the prior year, institutional investor leadership resulted in a nearly seven-and-a-half times higher recovery compared to cases led by individual investors).

RETIREMENT SYSTEMS' REPLY TO COMPETING
MOTIONS FOR LEAD PLAINTIFF APPOINTMENT
CASE NO. 3:21-CV-02623-EMC

securities class actions against Enron; and (3) *after* the SEC announced it was investigating Enron. *In re Enron Corp. Sec. Litig.*, 206 F.R.D. 427, 455 (S.D. Tex. 2002). What's more, in purchasing the stock, the group member was advised by an investment advisor that was Enron's largest institutional shareholder and under *formal investigation* by Florida's Attorney General and State Legislature for improperly using the institution's funds "while in possession of nonpublic information." *Id.* at 456.

The Branca Group's citation to *Teva* fares no better. There, the group was represented by two law firms and consisted of two institutions and an individual from a different country. *Teva*, 302 F. Supp. 3d at 494-95. In rejecting their appointment, the court was troubled by "evidence" that the group was forged pursuant to an agreement by counsel "that spans multiple cases" in which the firms would drop their adversity and join their clients together so "that both firms [would be] potentially eligible to serve as co-lead counsel in both actions." *Id.* at 495-96. The *Teva* court easily concluded that "[s]uch an agreement is evidence of exactly the type of lawyer driven litigation that the PSLRA sought to avoid." *Id.* at 496. Opposing movants present no such facts here. Nor can they.[6]

Second, the idea that the Retirement Systems—which each control and manage billions of dollars of assets for plan participants—can be manipulated by their counsel in this matter is absurd. Indeed, even before Saxena White was selected as the Retirement Systems' proposed lead counsel for this matter, each member of the Retirement Systems conducted a competitive process that vetted and evaluated potential outside counsel for securities litigation matters on the basis of, *inter alia*,

---

[6] The opinion in *Petrobras* is similarly inapposite. There, the court rejected two groups that each suffered from a host of clear deficiencies. One group's members "hail[ed] from three different countries," "manag[ed] nineteen distinct members funds that invested, independently," and sought appointment of two law firms and could not "adequately explain why it was applying in its motion to be represented" by two firms. *In re Petrobras Sec. Litig.*, 104 F. Supp. 3d 618, 622 (S.D.N.Y. 2015). In addition to this "hands-off" attitude, both members were subject to "various unique defenses" as to reliance regarding their "trading patterns and public statements." *Id.* at 622-24. The other group was similarly flawed, including having "no agreement in place" for either dispute resolution, division of authority and work between their two law firms, or resolution of discrepancies in their retainer agreements. *Id.* at 623.

RETIREMENT SYSTEMS' REPLY TO COMPETING
MOTIONS FOR LEAD PLAINTIFF APPOINTMENT
CASE NO. 3:21-CV-02623-EMC

their qualifications, experience, and fee proposals.[7]   Then, with regard to this matter, each member of the Retirement Systems meaningfully evaluated the merits of this case, and after careful deliberation, decided to recommend and received approval from their respective boards of trustees, executive director, or law departments to seek lead plaintiff appointment.  Nothing could be further from lawyer-driven litigation.

By contrast, the competing movants are a classic example of the tail wagging the dog.  These movants have indicated no prior relationship with either of their proposed lead counsel, and as noted further *infra* at 14, nothing close to the significant securities litigation experience of the Retirement Systems.  The competing movants, two of whom live in Italy, appear to have "selected" counsel based upon an aggressive online campaign by their counsel to solicit clients, which included a barrage of postings on Yahoo! Finance and other paid internet solicitations portraying a matter of increasing urgency.  Kaplan Reply Decl., Ex. B (collecting over 15 press release "alerts").  This type of solicitation was a primary concern for this Court in rejecting the applicants in *Jumei*, where evidence indicated that the Huang Group members did not choose their law firm "in any meaningful way[] to represent them" but rather responded to a "client solicitation from counsel" akin to the solicitations here.  *Jumei*, 2020 WL 5291872 at *4; *see also In re Muni. Mortg. & Equity, LLC, Sec. and Derivative Litig.*, No. 08-md-1961, 2008 WL 11363288, at *2 (D. Md. Nov. 17, 2008) ("the MMA Group does not deny that counsel commenced the collection of the Group by means of an attorney generated solicitation," which "is hardly consistent with the PSLRA policy disfavoring lawyer driven litigation").

### c. Baltimore Employees' Assignment From Baltimore F&P Is Valid And Proper

Recognizing the Retirement Systems' greater financial interest and adequacy, the other movants resort to specious attacks on Baltimore F&P's assignment of claims to its sister fund, Baltimore Employees.[8]

---

[7] For example, Plymouth County issued a public request for "qualified law firms to provide portfolio monitoring as well as securities litigation services," which is available at https://www.pcr-ma.org/general/page/rfp-portfolio-monitoring-services.

[8] The Branca Group apparently overlooked that Baltimore Employees and Baltimore F&P are sister

*Footnote continued on next page*

Before seeking appointment as lead plaintiff, Baltimore Employees received by assignment "all rights, title, and interest" in any claims relating to "Baltimore F&P's transactions in the securities of FibroGen."[9] *See* ECF No. 30-5. Assignments of claims have long been held valid in Maryland, as elsewhere. *See Med. Mut. Liab. Ins. Soc. of Md. v. Evans*, 330 Md. 1, 622 A.2d 103, 116 (1993) ("In Maryland it has long been held that a chose in action may be validly assigned."). Given the general rule favoring assignability, it is not surprising that courts in the Ninth Circuit and around the country frequently appoint lead plaintiffs who received all or a portion of their claims via assignment. *See Rieckborn v. Velti plc*, No. 13-cv-03889-WHO, 2013 WL 6354597, at *3 (N.D. Cal. Dec. 3, 2013) (appointing assignee as lead plaintiff); *Sokolow v. LJM Funds Mgmt., Ltd.*, No. 18-cv-01039, 2018 WL 3141814, at *5-8 (N.D. Ill. June 26, 2018) (same); *Boynton Beach Firefighters' Pension Fund v. HCP, Inc.*, No. 3:16-cv-1106, 2017 WL 5759361, at *7 (N.D. Ohio Nov. 28, 2017) (same); *Faris v. Longtop Fin. Techs. Ltd.*, No. 11-cv-3658, 2011 WL 4597553, at *5 (S.D.N.Y. Oct. 4, 2011) (same). In fact, the operative language of Baltimore Employees' assignment is standard language that has been accepted by numerous courts, including in the lead plaintiff context. *E.g.*, *Sokolow*, 2018 WL 3141814, at *7 (appointing lead plaintiff group in which one member received over 200 assignments and rejecting assertions of "perceived deficiencies" in substantively the same operative language). Sepulveda's argument that the assignment itself will subject the Retirement Systems to unique defenses flies in the face of this and additional on-point authority. *See Longtop*, 2011 WL 4597553, at *5-7 (rejecting argument that assignment would raise potential defenses that would render lead plaintiff incapable of representing the class); *Minneapolis Firefighters' Relief Ass'n v. Medtronic, Inc.*, No. 08-cv-6324, 2009 WL 1458234, at

funds located **within the same city** when arguing "there is no claimed preexisting relationship uniting these four investors located in different cities." ECF No. 51 at 5. In addition to sharing a common investment manager (*see infra* at 11-12), the Baltimore funds share many other connections, including offices in the same building, and an individual who served as Deputy Executive Director at one fund for over 22 years before becoming Executive Director of the other fund. *See* Kaplan Reply Decl., Exs. C & D.

[9] Sepulveda cites to *In re SLM Corp. Securities Litigation*, 258 F.R.D. 112, 116 (S.D.N.Y. 2009), but the assignment there was made **after** the lead plaintiff process and therefore the lead plaintiff "did not have Article III standing at the time this Court appointed it lead plaintiff." Here, by contrast, the assignment was timely made, and regardless, Baltimore Employees has Article III standing by virtue of the losses on its own investments.

RETIREMENT SYSTEMS' REPLY TO COMPETING
MOTIONS FOR LEAD PLAINTIFF APPOINTMENT
CASE NO. 3:21-CV-02623-EMC

*2 (D. Minn. May 26, 2009) (same).

Next, without citation to *any* authority, Sepulveda maintains that the assigned claims should be discounted from the financial interest calculation because Baltimore Employees will remit the proceeds from the assigned claims to Baltimore F&P. ECF No. 50 at 2. However, under Supreme Court precedent, an assignee properly asserts *all* rights to a claim notwithstanding an agreement to remit proceeds. *See Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 287 (2008) (finding assignee can assert claims and wondering "What does it matter what the [assignees] do with the money afterward?"). For that reason, courts attribute the assigned claims to the total claimed loss when calculating a party's financial interest, whether for lead plaintiff purposes or otherwise. *See Sokolow*, 2018 WL 3141814, at *6 ("[T]he Court sees no reason to exclude losses associated with claims assigned" from the financial interest calculation); *Longtop*, 2011 WL 4597553, at *5 (appointing institutional investor group and including both assigned and unassigned claims in the financial interest calculation); *accord Vitiello v. Bed Bath & Beyond, Inc.*, No. 2:20-cv-04240, 2020 WL 4783438, at *1 (D.N.J. Aug. 14, 2020).[10]

Sepulveda next asserts that there are "questions concerning the enforceability of the purported assignment" due to a provision granting Baltimore Employees powers of attorney. ECF No. 50 at 7-8. This argument is a red herring. It is undisputed that Baltimore F&P granted full title to the claims at issue to Baltimore Employees, and the inclusion of an *additional* provision purporting to grant powers of attorney does not affect the validity of the assignment in any way. *See* ECF No. 30-5. As the Supreme Court has explained, a power of attorney clause is different and more limited than an assignment, and "the addition of the power [of attorney]" does not deprive an instrument "of its force and character as an assignment." *Titus v. Wallick*, 306 U.S. 282, 289 (1939). The Second Circuit has similarly explained that "a mere power-of-attorney … does not confer standing to sue in the holder's own right because a power-of-attorney does not transfer an ownership interest in the claim," whereas "an assignment of claims transfers legal title or ownership of those claims." *W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 108

---

[10] *See also Northstar Fin. Advisors Inc. v. Schwab Invs.*, 779 F.3d 1036, 1047 (9th Cir. 2015) (allowing investment manager with assignment from its clients to maintain action because "the assignee of a cause of action stands in the shoes of the assignor").

(2d Cir. 2008).

In a last-ditch effort to salvage his motion, Sepulveda argues that "Baltimore Employees has provided no assurance that it is in possession of Baltimore F&P's discoverable materials or that it can otherwise control Baltimore F&P's cooperation for purposes of this litigation."  ECF No. 50 at 8.  But Sepulveda ignores the plain language of the assignment, in which Baltimore F&P has explicitly agreed "to cooperate in the pursuit of [this] legal action, including by providing documents and other discovery information that may reasonably be requested by Baltimore Employees."  ECF No. 30-5 at ¶ 3.  If this express contractual obligation does not provide Sepulveda with enough assurance that discovery will not be impacted by the assignment, he can take comfort in the Baltimore funds' use of the same investment manager, Rothschild Asset Management, which purchased FibroGen stock on behalf of ***both*** funds during the Class Period on the ***exact same dates*** at the ***exact same prices***.  *See* Kaplan Reply Decl. Ex. C at 1-2, 3-4.[11]

**B.  THE COMPETING MOVANTS DO NOT HAVE THE LARGEST FINANCIAL INTEREST AND, REGARDLESS, SUFFER FROM NUMEROUS DISQUALIFYING FACTORS**

**1.  Sepulveda Lacks The Largest Financial Interest And Suffers From Numerous Fatal Deficiencies**

Sepulveda does not qualify as the "most adequate plaintiff" under the PSLRA.  *See* 15 U.S.C. § 78u-4(a)(3)(B).  First, he does not have the largest financial interest in the litigation.  The Retirement Systems' total loss eclipses any possible calculation put forth by Sepulveda, and as explained in the Retirement Systems' Opposition and confirmed by the Branca Group, Sepulveda's *cognizable* loss is only a small fraction of his claimed loss.  ECF No. 52 at 8-9; ECF No. 51 at 4.  Using Sepulveda's true loss numbers under *Dura*, as calculated by both the Retirement Systems (ECF No. 52 at 5, 9) and the Branca Group (ECF No. 51 at 4), each individual member of the

---

[11] Sepulveda also argues that Baltimore Employees' certification is "flawed" because it is not signed by Baltimore F&P.  Courts have expressly rejected this exact argument.  *See Velti*, 2013 WL 6354597, at *3 (upholding certification where it showed "trades by various individuals or entities, none of whom [was the assignee]"); *HCP*, 2017 WL 5759361, at *6 (finding proper assignee certification because "the parties were only required to provide a list of relevant transactions, which both parties did").  Sepulveda's reliance on *Steamfitters Local 449 Pension Fund v. Central European Distribution Corp.*, No. 11-cv-6247, 2012 WL 3638629 (D.N.J. Aug. 22, 2012) is misplaced because, unlike here, the movant failed to obtain "an assignment of title" and therefore had "no ownership interest in the claims" invalidating the certification.  *Id.* at *3.

Retirement Systems has a significantly larger financial stake in this litigation.

Second, Sepulveda is clearly inadequate and atypical. It is undisputed that Sepulveda was a net seller and a net gainer on his common stock trades, and therefore profited from the alleged fraud. *See* ECF No. 23-3 at 2. Under settled law, this "effectively disqualifies" him from serving as lead plaintiff. *See* ECF No. 52 at 8 (collecting cases). Sepulveda's high-volume, hyperactive trading in short-term call and put options only compounds the problem.[12] *See Cook v. Allergan plc*, No. 18-cv-12089, 2019 WL 1510894, at *2 (S.D.N.Y. Mar. 21, 2019) (disqualifying investor as atypical where 60% of his claimed losses resulted from options trading). As this Court noted in the *Tesla* litigation, it is often exceedingly difficult to determine at the lead plaintiff stage how much, if any, of an options-related loss is "causally related" to an alleged fraud, and in such situations the entire options loss may be properly excluded. Kaplan Reply Decl., Ex. E at 4 ("Because [options trader's] total loss was uncertain and could not be readily ascertained, the Court did not determine that [it] had the largest financial interest.").

Third, while Sepulveda may argue that his online posts show he was aligned with the Company's public statements, that contention is undercut by the fact that he partook in 665 transactions during the Class Period and liquidated his common stock holdings on at least thirty occasions. *See* ECF No. 52 at 10. In one stark example, Sepulveda commented on December 27, 2019 that it was "***[a]bsolutely insane to sell [FibroGen stock] at this point***," and pontificated "[w]hy even invest in stocks if you think this is a Sell." *See* ECF No. 53-1 at 4 (Dec. 27, 2019, 4:00 PM posting). However, ***the very next trading day*** (December 30, 2019), Sepulveda himself ***sold 1,725 shares***, he then ***sold 25 call options the trading day thereafter*** (January 2, 2020), and ***completely liquidated his FibroGen common stock position on five separate occasions during the following three months***. *See* ECF No. 53-3 at 2-3 (noting December 2019 sales and liquidations between January and April 2020); ECF No. 53-2 at 12 (noting option trading in January 2020).

[12] Any notion that Sepulveda, as a trader of both common stock and options, is uniquely positioned to represent the Class is not only belied by his trading, it has no legal support. "Nothing in the PSLRA indicates that district courts must choose a lead plaintiff with standing to sue on every available cause of action[,]" *Hevesi v. Citigroup, Inc.*, 366 F.3d 70, 82 (2d Cir. 2004), and "'[t]he fact that plaintiffs might have different types of securities does not require a separate class or co-lead plaintiffs[,]'" *In re XM Satellite Radio Holdings Sec. Litig.*, 237 F.R.D. 13, 20 (D.D.C. 2006).

RETIREMENT SYSTEMS' REPLY TO COMPETING
MOTIONS FOR LEAD PLAINTIFF APPOINTMENT
CASE NO. 3:21-CV-02623-EMC

**2.  The Branca Group Also Lacks The Largest Financial Interest And Suffers From Numerous Fatal Deficiencies**

Neither can the Branca Group qualify as the "most adequate plaintiff."  The Branca Group admits that its loss, whether viewed collectively or individually, is far smaller than that of the Retirement Systems.  ECF No. 41-4.  Indeed, the Branca Group admits that even under a *Dura* analysis, its losses are ***less than half*** of the Retirement Systems' losses and are below Baltimore Employees' ***individual loss***.  ECF No. 51 at 8.

Moreover, the Branca Group has failed to make even a preliminary showing of adequacy. Branca and Mollo, residents of Italy who executed their certifications in Rivoli, Italy (ECF No. 41-2), did not file a proper certification by the 60-day lead plaintiff deadline set by the PSLRA.  *See* 15 USC § 78u–4(a)(2); 15 USC § 78u–4(a)(3)(A)(i)(II).  Neither of their initial certifications includes the crucial statutory language required for foreign declarations submitting the declarant to the penalty of perjury "under the laws of the United States of America," 28 U.S.C. § 1746, and their "corrected" certifications are untimely.  For this reason alone, the Branca Group's motion should be denied.  *See Nasin v. Hongli Clean Energy Techs. Corp.*, No. 2:17-cv-3244, 2017 WL 5598214, at *3 (D.N.J. Nov. 21, 2017) (rejecting movant for failing to include language in its certification submitting to the penalty of perjury).

In addition, the Branca Group only made a superficial attempt to demonstrate its ability to function cohesively and has not made any effort to explain how this pair of distant relatives in Italy would be able to effectively oversee counsel prosecuting complex claims under the U.S. securities laws.  Moreover, while Branca and Mollo claim to be distant relatives (at most, first cousins once removed), even a close familial relationship alone is not enough to ensure the effective functioning of a proposed lead plaintiff.  *See Cendant*, 264 F.3d at 266-67 (stating that the key inquiry is "not one of relatedness" but whether a movant group would "fairly and adequately protect the interests of the class"); *In re Versata, Inc., Sec. Litig.*, No. 01-cv-1439 SI, 2001 WL 34012374, at *5 (N.D. Cal. Aug. 20, 2001) (explaining that a preexisting relationship is often not a the best proxy "to ensure that the lead plaintiffs will actively represent the interests of the purported class").

Recognizing that claiming to be the "son of [another's] cousin" offers little to assess

RETIREMENT SYSTEMS' REPLY TO COMPETING
MOTIONS FOR LEAD PLAINTIFF APPOINTMENT
CASE NO. 3:21-CV-02623-EMC

adequacy, the Branca Group submitted a joint declaration.  ECF No. 41-3.  But at just two pages, it is devoid of specifics, including basic information such as "[w]ho are these people" and "how are they going to make decisions?"  *See Jumei*, ECF No. 32, at 17.  In addition, the declaration does not: (1) mention any prior experience overseeing counsel in complex litigation or even of working together in any professional capacity; (2) explain how Branca and Mollo would exercise oversight over counsel; or (3) express their commitment to attend dispositive court hearings or hearings on class certification, actively participate in discovery, or otherwise fulfill their affirmative obligations with respect to case prosecution and settlement.[13]  *See Nakamura v. BRF S.A.*, No. 18-cv-2213, 2018 WL 3217412, at *3-4 (S.D.N.Y. July 2, 2018) (rejecting motion by entities owned by two brothers, because, among other things, "they offer no specifics as to their history of business collaboration and how it positions them to advance the interests of the class").  The Branca Group's declaration also does not address how they would break any deadlocks, which is particularly critical—and quite possibly inescapable—when a movant is a pair.

**III.    CONCLUSION**

Accordingly, the Retirement Systems respectfully request that the Court grant their motion.

Dated:  July 2, 2021                               Respectfully submitted,

                                                                **SAXENA WHITE P.A.**

                                                                */s/ David R. Kaplan*
                                                                David R Kaplan (SBN 230144)
                                                                dkaplan@saxenawhite.com
                                                                12750 High Bluff Drive, Suite 475
                                                                San Diego, California 92130
                                                                Telephone: (858) 997-0860
                                                                Facsimile: (858) 369-0096

                                                                *Counsel to the Retirement Systems*

---

[13] In stark contrast to the declaration's description of Branca's background, the declaration glaringly contains ***no detail*** on Mollo—whose loss is three times larger than Branca's—other than to say she is "retired" and has "approximately forty years of investing experience."  *Compare* ECF 41-3 ¶ 3 and ¶ 4; *see Camp v. Qualcomm Inc.*, No.18-cv-1208, 2019 WL 277360, at *3 (S.D. Cal. Jan. 22, 2019) (rejecting motion of investor because he failed to explain "who he is"); *accord In re Boeing Co. Aircraft Sec. Litig.*, No. 19-cv-02394, 2020 WL 476658, at *3-4 (N.D. Ill. Jan. 28, 2020).

RETIREMENT SYSTEMS' REPLY TO COMPETING
MOTIONS FOR LEAD PLAINTIFF APPOINTMENT
CASE NO. 3:21-CV-02623-EMC

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on July 2, 2021, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel or parties of record.

*/s/ David R. Kaplan*
David R. Kaplan

RETIREMENT SYSTEMS' REPLY TO COMPETING
MOTIONS FOR LEAD PLAINTIFF APPOINTMENT
CASE NO. 3:21-CV-02623-EMC